## COMAR OIL CO. et al. v. HACKNEY et al.

No. 16789—Opinion Filed Sept. 28, 1926.

**1. Oil and Gas—Partial Permanent Damages to Realty by Escapement of Refuse from Oil and Gas Wells.**

Defendants owned and operated several hundred oil and gas wells in a large area from which large quantities of salt water, crude oil, and bottom sediment, by the natural drainage, flowed and were carried by floods into a fresh water creek having its course through the farms of plaintiffs. Thereby, deposits of such refuse remained upon the banks and in the creek bed and by floods were carried, deposited, and remained upon the lands of plaintiffs, adjacent to such creek, permeating the soil, and permanently destroying the value of such areas for agricultural and other purposes for which they were used. It being conceded that it was impossible by any reasonable and known means and diligence on the part of defendants to prevent such escapement and the consequent damages to such lands, plaintiffs were entitled, under the measure for permanent damages to realty, to recover as for partial permanent damages to their farms, the values of those certain areas of such farms, the usable values of which were thus permanently destroyed.

**2. Same—Judgment—When Bar—Rule Stated.**

A judgment accordingly under paragraph 1, supra, is a bar to any recovery by plaintiffs against defendants for such wrongful acts, past, present, and future, in so far as such definite areas so damaged may be involved; but is not a bar. to actions by plaintiffs for such torious acts of defendants thereafter as may damage temporarily or permanently such other portions of the lands not included in such judgment.

**3. Same—When Permitting Waste Oil to Pollute Land Constitutes Abatable Nuisance.**

The rule that a violation of section 7969, C. O. S. 1921, prohibiting certain refuse from oil or gas wells to run into a stream used for watering stock, requiring such refuse to be stored upon the premises and immediately burned or transported, and in no case permitted to flow over the land, constitutes a nuisance, which, in legal contemplation can be abated by the expenditure of labor or money, is a general rule, but is not applicable to a state of facts in a case within the rules of paragraphs 1 and 2, supra, where it is conceded that it would be impossible by any known means and by any reasonable care and diligence to prevent such escapement of refuse, in consequence of which the lands were permanently damaged.

**4. Same—Damages Permanent if Injury to Realty Itself not Abatable.**

Whether the source or cause of permanent damages under the paragraphs, supra, may be susceptible of remedy or abatement by the expenditure of labor or money, the damages to the realty are permanent if the injuries to the lands themselves are not susceptible of abatement or remedy by the expenditure of labor or money.

**5. Pleading—Departure—Motion to Strike Only Method.**

The question of departure in pleadings can be presented on appeal only by a timely motion to strike.

**6. Disposition of Cause.**

The judgment for partial permanent injuries to farms of plaintiffs on the theory that certain described areas or portions thereof were permanently injured by the total loss of the values of such areas for agricultural and other purposes for which they were used, is sustained by the record under the rules, supra.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Noble County; Claude Duval, Judge.

Action by E. F. Hackney et al. against Comar Oil Company et al. Judgment for plaintiffs, and defendants appeal. Affirmed.

Certain portions of the map referred to in subdivisions 1, 2 of the opinion are inserted on pages 286, 287, as aiding in understanding the matters here in controversy (the "red lines" there referred to being shown thus: —.—.—) :

Koerner, Fahey & Young, Robinson & Micher, Ramsey, de Meules & Martin, H. S. Gurley, W. K. Moore, James B. Diggs, William C. Liedtke, Redmond S. Cole, C. L. Billings, Felix Duval, R. H. Hudson, and H. H. Booth, for plaintiffs in error.

T. J. Sargent and Irving D. Ross, for defendants in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. Hackney and others had joint and several judgments in February of 1925, against Comar Oil Company and nine other defendant oil companies for $18,500, growing out of the pollution of Bird's Nest creek, a fresh water creek which flows through the Tonkawa oil fields near the north boundary of Noble county, and into the Salt Fork of the Arkansas river. The action was bottomed on damages to the

farms of plaintiffs through which said creek flowed. Defendants appeal. The record is from 2,000 to 3,000 pages, the pleadings alone consuming several hundred pages, the briefs being voluminous. About 24 days were consumed in submitting testimony and argument, the trial commencing November 6, 1924, and continuing until February, 1925. On the material issues presented, we shall determine the correctness of the judgment, and dispose of the assignments of error. Such issues may be observed from the findings and judgment of the court and otherwise, as stated herein.

The Hackneys, in the month of July, 1923, sued defendants for temporary injuries to their 240 acres—for loss of crops, loss of the use of the creek, and like; Collier likewise sued as the owner of 160 acres; and Sipe likewise sued as the owner of 160 acres. In February, 1924, they sought injunction against defendants to prevent the pollution of said creek. Other farmers likewise had brought suits which were settled and dismissed. In November, 1924, on stipulation of all the parties in open court, said three damage suits and said injunction suit were consolidated, and were assigned for trial on November 6, 1924, it being also stipulated that further pleadings should be made by the parties without prejudice to trial on said day. Thereupon plaintiffs filed amended supplemental petitions, alleging permanent injuries to their three farms, on which last pleadings the causes were tried together. The errors alleged by defendants on account of such change in theory of the damages will be hereinafter noticed.

Substantially stated, the court found as facts that the lands of plaintiffs, describing same, were used by them for raising live stock and for farming and for dairy purposes; that along said creek, on the lands of plaintiffs, were pecan and other trees which had been utilized by the plaintiffs in summer as shade, and in the winter for shelter for live stock, some parts of such lands being used for pasture; that prior to April, 1923, said stream had furnished good fresh water in abundance for the live stock of plaintiffs; that said creek traversed all of said lands in a meandering and zigzag fashion, occupying a course of about two miles through the Hackney land; that prior to April, 1923, said stream was unpolluted in any way; that said creek overflowed annually and often several times during the year, the extent of such overflows varying; that in 1922, said creek overflowed 145 acres of the Hackney farm, 100 acres on the Sipe farm, and 65 acres on the

Collier farm; that during the early part of June, 1923, said stream overflowed 78 acres of the Hackney farm, 56 acres on the Sipe farm, and 38 acres on the Collier farm, and that there were other overflows from said creek on said lands of plaintiffs during 1923 and 1924, but of less volume and extent than said flood of 1922 and said flood of June, 1923; that during and since the months of May and June of 1923, defendants and each of them owned separate leaseholds in the Tonkawa oil fields or Three Sands field, northwest of the lands of plaintiffs, comprising about 2,250 acres, within the natural water shed of said creek, on which they operated 500 to 600 oil and gas wells; that salt water, crude oil, B. S. (bottom sediment), and other refuse escaped from said wells and found lodgment in said creek channel on the lands of plaintiffs, and in time of rains or freshets, said refuse was deposited on parts of the overflowed lands of plaintiffs, said wells producing oil in large quantities from three different sands; that during the time involved, large quantities of said refuse were brought to the surface of the ground on the leases of defendants, and permitted to escape through the natural drains into said creek, and to flow through its course, and did thoroughly pollute said creek on the respective farms of plaintiffs, continuing up to the time of the trial, rendering the water of said creek wholly unfit for stock to drink or wade through, and greatly hampering plaintiffs in the proper use of the lands adjacent to said creek; that during and by said flood of June, 1923, due to heavy rains, 78 acres of Hackney, 56 acres of Sipe, and 38 acres of Collier farms, were flooded; that this flood brought with it also from the leases of defendants, quantities of salt water, crude oil, and B. S., some of which, after the flood receded, was left in the channel of said creek on the lands of plaintiffs, and upon the banks, and on the vegetation along the creek banks; that on the Hackney land particularly, were found large chunks of B. S. deposited in the pasture land overflowed, on at least a few spots; that some trees on this land had died, or were dying, as a result thereof, and that in time all the trees on the banks would likewise die; that, so as aforesaid, sufficient quantities of salt water and other deleterious substances were deposited on some spots or portions of the respective lands of plaintiffs so as to permanently injure said lands, a few spots on each one being totally destroyed, some partially injured permanently, some spots being in greater degree than others, and extended to large areas within said

flooded district, where no damage is apparent at this time; that if defendant should cease operating their leases and said refuse cease to escape into said creek, the injuries already done to the lands of plaintiffs are not susceptible of remedy by the expenditure of money or labor, nor entirely by nature and the lapse of any known period of time; that plaintiffs abandoned their injunction action on account of the damages already done, and the burdens that would be imposed upon plaintiffs to enforce the injunction and the ineffectiveness of such order; that by no amount of care and diligence could defendants prevent said refuse from polluting said creek, nor prevent the pollutions from being lifted out of the channel thereafter and depositing it upon the lands of plaintiffs in some degree, and to the extent as heretofore done; that the oil wells and equipment of defendants on said leases constitute a legal and permanent structure since the time said field will last is indefinite; that in effect all defendants were joint tort-feasors and guilty of negligence which proximately caused the damage to each of the plaintiffs; that it appears not only from the testimony of plaintiffs' witnesses, but also from the testimony of defendants' witnesses, that the lands of the plaintiffs have sustained permanent injury, the evidence of defendants showing that the value of such lands after the pollution was less than before, the difference between the testimony of plaintiffs and defendants, in this behalf, going only to the quantity of the land affected and the amount of depreciation in values before and after the flood; that the Hackneys have sustained permanent damages to their 240-acre farm in the gross sum of $8,500; Collier, to his farm, $4,200, and Sipe, to his farm, $5,800; that "this amount is intended to cover all damages to said land, past and present, or that may occur hereafter by the pollution of Bird's Nest creek and its overflow to the extent it did overflow in June, 1923," on 78 acres of Hackney, 38.6 acres of Collier, and 56 acres of Sipe land, "and as is more definitely defined by the red lines representing the polluted area shown on the plat marked exhibit 'A' as evidence in this case."

As matters of law, the court concluded that the injunction should be denied plaintiffs; that defendants had no right to permit said refuse to escape upon the lands of plaintiffs, and were liable for the damages proximately resulting from their negligence in so doing; that, inasmuch as the evidence of defendants tends to show that it is impossible for them to prevent such

escape of said refuse through said creek from this particular oil field, it is not to be presumed that defendants will cease the doing of said wrongs, or that the state will abate same and thus lessen the damages to occur hereafter, and that therefore plaintiffs are entitled to recover in gross sums, all permanent damages, past, present and future, "although a part of the damages to occur may be based seemingly on the presumption that the defendants will continue to do a wrong"; that the court thus bases its findings and conclusions on the evident fact, and as shown by the evidence, that the situation is unusual, and that said wrongs will continue because said stream will be polluted as long as this most unusual oil field produces oil; that the damages awarded as permanent damages are on the theory that neither the injuries nor the source of the injury are abatable, and that none of the parties should therefore suffer a multiplicity of suits. Judgment accordingly was so rendered.

While we do not approve literally every finding and conclusion of the learned trial court, the substantial findings and conclusions are correct. Space forbids an extended review of the evidence to support the findings on material issues. In his painstaking way, the trial judge, in order to understand the evidence and to determine the merits of the claims of the parties, made two personal inspections of the lands, in company with attorneys and representatives of the parties. Defendants proved their enormous investments and production from their said leases of approximately 17,000 barrels of oil daily. They admitted the escape of large quantities of the refuse, disavowing any malice, and asserted their inability, by any modern known method, wholly to prevent same. They admitted they had no right so to do, since section 7969, C. O. S. 1921, expressly inhibits and person from permitting such refuse to run into a stream for watering stock, and requires the same to be impounded and either burned or transported from the premises, and in no case permitted to flow over the land, and particularly forbids the allowing of salt water to flow over the surface of the land. In effect, they admitted that plaintiffs had been damaged by the pollution of said stream by them. As found by the court, they introduced some evidence tending to show that the damages were of a paramount character—not temporary —their evidence tending to minimize such permanent injuries. Evidence otherwise and their further contentions will be hereinafter noticed.

1, 2. It is apparent that the judgment, or the findings and conclusions aforesaid, construing all parts thereof together, is for partial permanent injury to the respective farms; that is, for the total loss of the usable value of the respective number of acres set forth in the judgment. It inheres in a judgment for permanent injury to real estate that future damages to the proven usable value of the land are covered, since the injuries past, present, and future, are to be recovered in one action. The record shows that a county surveyor, by personal observation, meandered the lines on each side of said creek on each farm, and traced the same according to the appearance of the ground as shown by the deposit of said refuse and the total or partial absence of vegetation, and made the map introduced in evidence as exhibit "A." The extent of the land which was polluted on each side of said creek, and found by the court to have been permanently destroyed for the purposes for which it was used, is thus indicated by red lines on the plat and referred to in the judgment to make same more definite. The respective areas within such red lines were determined by the county surveyor in acres and so found by the court. It is not disputed that the proper measure of damages was the difference in value of the land immediately before and after the damages, if the damages were permanent. Numerous witnesses testified for plaintiffs, under said measure, and the evidence is ample to support the judgment in this behalf. Clearly, this judgment is a bar against the plaintiffs ever recovering damages hereafter to the said lands thus bounded and consisting of the number of acres in each farm indicated respectively. Other floods may come by which the areas within such red lines may be submerged with refuse, yet plaintiffs would have no cause of action against defendants therefor, because the judgment is for the permanent or total destruction of said lands for the said purposes for which they were used. It is equally clear, that should future floods, so as aforesaid, injure or damage the remaining acres or portions of the farms of plaintiffs, or any parts thereof, outside of the red lines or acreage thus permanently injured, plaintiffs would not be barred by this judgment from maintaining their rights against defendants, whether such damages be temporary or permanent injuries to such other lands. And why not? We perceive no reason in natural justice why this should not be so, and, we think, under the law, it is so.

3. Defendants submit more than 30 assignments of error, argued on numerous propositions. The first is that the court erred in allowing plaintiffs' recovery for future damages. As pointed out, the court, in allowing permanent damages to the respective farms for the total destruction for agricultural purposes of certain portions thereof, did not base any part of those awards upon any future acts of the defendants—but wholly upon what had already been done. The finding above that, "although a part of the damages to occur may be based solely upon the presumption that the defendants will continue to do a wrong," standing alone, might be construed as indicating that the judgment was intended to cover future damages to the areas within the red lines, occasioned by future acts of defendants. However, in connection with what precedes, and under all the findings, it is merely an argument, since the court made it clear by what precedes and follows, that the damages allowed were for partial permanent injuries to the farms. The contention that the court awarded a recovery for future damages is in the face and teeth of the plain purport and intendment of the judgment. Defendants contend that the pollution of the stream is a temporary or continuing cause of injury, and recovery is limited to damages sustained prior to the filing of the petition. Defendants rely upon Carter Oil Co. v. Kerley, 109 Okla. 69, 234 Pac. 737. They emphasize the holding there, that under said statute prohibiting such refuse flowing into a stream or over the land constitutes a nuisance which can be abated by the expenditure of labor and money, and the further rule there announced, that when "a cause" of injury is abatable by the expenditure of labor and money, it will not be held to be permanent. They urge, therefore, that the injuries complained of by plaintiffs were necessarily temporary, because they were abatable by the expenditure of labor and money, in consequence of which this judgment is erroneous, purporting to cover future injuries by the allowance of permanent damages. We do not think the said first holding of said case, that a violation of said statute is a nuisance and can be abated by the expenditure of labor and money, is more than a general rule. Ordinarily, this is true. That case is distinguishable from the instant one upon the facts. Here is the substantial natural drainage of refuse from a great oil field, admitted by defendants by their testimony and in open court, to have been unabatable by the expenditure of labor and money. Certainly, defendants are not in position now to claim that the same was so abatable. We con-

cur with them. that this entire oil field ought not to be annihilated and abolished by injunction herein, or on action by the state, or otherwise, simply to prevent the admitted necessary pollution of the lands of plaintiffs. A decent respect for property rights of plaintiffs impels us thereto. From these considerations, the court properly denied injunctive relief to plaintiffs. Defendants had, as found by the court, established a permanent structure, and neither the cause of the damages nor the damages themselves to these lands, were abatable. Defendants not only polluted the stream so that it was temporarily and perhaps permanently unfit for stock watering, but they permanently destroyed the usable values of the lands.

4. That case is also distinguishable from the instant one under the second rule therein relied upon, whether the source or the cause of the injury was abatable. In Midco Gasoline Co. v. Back, 95 Okla. 29, 217 Pac. 1041. it is held that, although the source of plaintiffs' damages may be susceptible of remedy or abatement, such rule is not applicable where there is no evidence that the injuries themselves complained of are susceptible of abatement. After discussing the cases which refer to the cause of the injury rather than the injury itself, as being abatable, this court observes:

"In each of these cases, cited by counsel for plaintiff in error, the abatement of the cause of the injury, and not the injury itself, was possible, and the injury was not of a permanent nature.

"In the case at bar, the injury is the result of the land being permeated with the oil, which, under the theory of plaintiff, and under the findings of the jury, render the same unfit for agricultural purposes and the same was not capable of being abated.

"It will be observed from an examination of the case of City of Cushing v. High, 73 Okla. 151, 175 Pac. 229, it was held that if the injury, 'not the source of the injury,' was abatable, then the plaintiff would only be entitled to damages that had accrued at the time the suit was brought. * * * Under the rule, as we understand it, the injury complained of, and not the source of the injury, must be susceptible of remedy or abatement," etc.

Such rule is consonant with reason and natural justice. The destructive effect upon the soil of salt water and natural petroleum are of such common notoriety as to constitute judicial knowledge. While the court found that some of the lands were only spotted with such deposits, it cannot be contended in reason that the usable value of such lands was not permanently destroyed. The next contention, that it is not shown that each defendant will contribute to the injury for the same length of time, and therefore a joint and several judgment for future damages is speculative, assumes that the damages were for future torts of defendants.

5. Defendants next contend that there is no evidence to sustain a judgment for future damages, and the judgment is not responsive to the pleadings and contrary to the evidence. This has been disposed of, except as to the responsiveness of the pleadings. In this connection, we also consider the contention that the court erred in permitting the filing, and refusing to strike, the supplemental petitions and amended supplemental petitions of plaintiffs. In 1923, plaintiffs sued, alleging temporary damages. By amended petitions they still sought temporary damages, and also sought injunctive relief. Following the said flood of June, 1924, they seem to have concluded that their injuries were permanent, and on September 4. 1924, they filed supplemental petitions for permanent damages and included items of temporary damages theretofore pleaded. About the 18th of that month, the court was considering certain objections and motions of defendants to strike said pleadings on the ground of departure, at which time in open court plaintiffs requested leave to amend their supplemental petitions to comply with the objections raised by defendants, and to set out the particular acreage claimed as permanently damaged. Counsel for the defendants stated that they had no objection to any proper amendment of the pleadings, and asked only that if such amendments be allowed, defendants be given proper time to file suitable pleadings thereto, and that plaintiffs might have until September 27th to file further pleadings if defendants be given seven days thereafter to file pleadings they desired, with the understanding that on October 28th, following, "we will meet and dispose of these motions and settle issues." Defendants, by their attorneys, stated that this was satisfactory to them. The terms of this agreement and the agreement also to consolidate said four cases, were embodied in a stipulation of record, and the court made an order accordingly. Pursuant thereto, and on September 27th.. plaintiffs filed their supplemental petitions, on which the cause was tried. Defendants attacked same by motions, one ground of which was that plaintiffs be required to group all claims for permanent injuries to the lands in one cause of action. Defendants did not object to the filing of these latest petitions, nor did they move to strike them on the ground of departure. It

is well settled that, if defendants objected to such pleadings on the ground that they constituted a departure—a change from temporary to permanent damages—that their only remedy was by motion to strike, and not by demurrer or objection to the introduction of evidence. Merchants' & Planters' Ins. Co. v. Marsh, 34 Okla. 453, 125 Pac. 1100; National Fire Ins. Co. v. Nichols, 85 Okla 24, 204 Pac. 272. Defendants thus waived any rights they might have had in this behalf, and cannot now claim that the judgment for permanent damages is not responsive to the pleadings. Evidently they cannot now claim that there was error in permitting the filing of such pleadings, since they, in effect, consented thereto. During the trial one of the attorneys for defendants stated: "and the more you must come to the conclusion that it would be impossible ever again to have nice clear water." On being asked if he thus conceded permanent injuries, he stated that he did not, but that the damage to the creek was such that no power could help, exercising the highest degree of care. This was tantamount to an admission that the damages to the creek were not abatable, and if not abatable, were permanent. Moreover, as shown heretofore, defendants themselves introduced some evidence tending to show that the damages were permanent. There is no merit in the contention that there was a departure.

The next contentions, that the judgment does not purport to give a recovery for all damages which plaintiffs may sustain for injuries inflicted from the same cause, and is not a bar to future actions by the plaintiffs for the same cause of injury, are without merit and are disposed of heretofore. It is also contended that the judgment is too indefinite to be valid. in that it re'ers to the said lines bounding the areas permanently injured, beyond which, if plaintiffs should claim damages from defendants for future acts. the location of such lands could not be determined. It is sufficient to observe that if there be such uncertainty, sufficiently permanent records of the lands within such red lines and covered by this judgment, may, with ease. be effected. Defendants insist that the judgment does violence to a great industry of the state. in that there is thereby no bar to future actions by plaintiffs. Certainly this court would not unjustly adhere to any rule that would work a legal injustice to the great oil industry. Agriculture is also a great and basic industry. But whether either or both industries be great or small, before the majesty of the law, all rights are entitled to equal protection, even unto the most humble. The al-

chemy of skill and of commendable zeal of counsel for defendants, cannot avail otherwise. .If a municipal corporation, having power of eminent domain, were to establish a sewage disposal p'ant or any structure as great, important and legitimate as the Tonkawa oil field. knowing in advance. or thereafter, that the refuse could not be stored upon the premises and destroyed or removed, and that it would be impossible to restrain its refuse from flowing upon the lands of others in such quantities as permanently to injure same, such corporation would acquire, by condemnation proceedings or otherwise, the necessary land to receive such deposits, failing to do which, damage would lie against it, since by Constitution no private property can be taken for public use without just compensation. By that token may a private corporation or other person, though without the power of eminent domain, so take private property without just compensation?

Let the judgment be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. p. 1207. §949 (Anno). (2) 34 C. J. pp. 835, 836, §1244. (3) 40 C. J. p. 1207. §940 (Anno). (4) 40 C. .J. p. 1207. §949 (Anno); 8 R. C. L. p. 482: 5 R. C. L. Supp. p. 471. (5) 3 C. J. p. 793. §717 (Anno). (6) 40 C. J. p. 1207, §949 (Anno).