### CITY OF LAWTON v. WILSON.

No. 17615.    Opinion Filed Sept. 27. 1927.

(Syllabus.)

1. Limitation of Actions—Action Against City for Damages from Negligent Operation of Sewage Disposal Plant.

Where an action is brought against a municipal corporation for damages on account of the negligent operation of its sewage disposal plant, and such acts of negligence are shown to have occurred within two years prior to the institution of said suit, a plea of the statute of limitations will not bar a recovery thereon, although it is shown that the said disposal plant was installed 15 years prior to the institution of said action.

2. Judgment—Successive Recoveries Against City for Damages from Negligent Operation of Sewage Disposal Plant.

Successive actions may be maintained for damages accruing from time to time because

of the failure of a municipal corporation to keep its sewage disposal plant in repair and because of its failure to operate same in the proper manner.

### 3. Waters and Water Courses—Damages from Polluted Waters—Necessity for Causal Connection.

Recovery for expense of making permanent improvements, which have no causal connection, on account of damages from polluted waters, cannot be had.

Error from District Court, Comanche County; Sam Hooker, Judge.

Action by Walter H. Wilson against the City of Lawton. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

Black & Black, for plaintiff in error.

Parmenter, Parmenter & O'Neal, for defendant in error.

LESTER, J. The parties will be referred to as they appeared in the district court.

The plaintiff, W. H. Wilson, brought an action against the defendant, city of Lawton, for damages on account of certain alleged acts of negligence on the part of the city.

The plaintiff recovered judgment against the city of Lawton for the sum of $1,615, from which said defendant prosecutes an appeal to this court.

The first proposition presented by the defendant is that the statute of limitations was a bar to the plaintiff's cause of action.

It appeared that the city of Lawton caused to be erected near Cache creek a septic tank with which to treat the sewage of the city of Lawton. It further appears that the plaintiff was the owner of a certain farm composed of 160 acres and that Cache creek runs across plaintiff's farm. Plaintiff in his petition alleged that the defendant for 15 years had discharged its sewage in Cache creek in such a manner as to cause the waters in said creek to become polluted; that said waters ran into and across the plaintiff's farm; and that the said waters when so polluted were rendered unfit for domestic use; that they caused offensive odors and endangered the health of plaintiff and his family.

The plaintiff further alleged:

"That the conditions complained of can be by the city remedied and removed by the use and expenditure of money and labor, that the natural drainage of the country is such that it could easily and properly be carried by drainage pipes through and off of plaintiff's land and that said sewage could be disposed of, causing no harm to any one, by the establishment and operation of a sewage disposal tank or plant.

"That at one time the city did install and operate a sewage disposal plant to treat and dispose of said sewage, but that said city has continuously failed, neglected, and refused to continue its operation, has permitted it to become wholly useless and worthless for said purpose, to become rusty, worn out and dilapidated, and its use has been wholly abandoned for many years last past. That if said sewage disposal plant had been properly handled, kept clean and in repair the conditions herein complained of would not now prevail, and by the installing of a new sewage disposal plant said sewage could be disposed of without injury or damage to plaintiff."

Defendant filed its answer, in which it alleged, among other things, that:

"For more than two years prior to the filing of the plaintiff's petition herein had maintained and operated and has ever since maintained and operated with due diligence a septic tank as a part of its sewage system."

A large number of witnesses testified that as a result of the defendant emptying its sewage into Cache creek the water of said creek which ran in and across plaintiff's farm was polluted and contaminated; that it was unfit for any character of domestic use; that it was unsafe for stock to drink from the waters of said creek on plaintiff's farm. Plaintiff testified that he could not use the water either for his family or his stock, and that he was compelled to supply his family and stock with water hauled from a long distance. The plaintiff also testified that on account of the condition of said water it had diminished the rental value of his farm in the sum of $750 per year.

The question here presented is whether at the time defendant commenced emptying its sewage into Cache creek it constituted a permanent injury to the plaintiff's property, for which only one action could be brought, or whether the defendant's negligence in the manner in which it emptied its sewage into said creek was such an act of negligence as constituted a severable cause of action.

It appears from the record that the case was tried to the court and jury upon the theory that the defendant was guilty of negligence in the manner in which it operated its disposal tank, and the plaintiff was confined to the damages, if any, for a period of two years last past prior to the institution of plaintiff's cause of action.

The plaintiff introduced in evidence the deposition of H. J. Darcey, who qualified

as a sanitary engineer. This witness stated that in the year of 1923 or 1924 he had visited and inspected the sewage disposal plant of the defendant. The testimony of this witness in part is as follows:

"Q. What were the effects of the sewage as it went out the outlet? A. Well, considerable solid matter came out of the tank from the outlet, but as to the condition of the bottom, you couldn't tell, because there was possibly two or three feet of water in there at the time. Q. But you say there were solids coming out at the outlet of the sewer where it emptied into Cache creek? A. Yes. Q. What do you mean when you say that sewage was passing through the disposal plant? A. It was going in the inlet end and passing through the tank and out the outlet side. * * * Q. Now, the sewage that was going through the by-pass, was that passing through the septic tanks from the disposal plant? A. No, sir. Q. Then the sewage that was going through the by-pass, would that be raw sewage or sewage that had been treated by the disposal plant? A. Raw sewage. Q. From your examination of the disposal plant there at Lawton, just explain in detail how the plant operates when properly functioning? A. The raw sewage entering into the plant flows through, and as the velocity is decreased to that extent it allows the suspended matter to settle to the bottom and the clear or partly clear effluent passes on to the outlet, the solid matter settling out in the bottom requires bacterial decomposition and should later be disposed of by drying on sludge beds. Q. Are there any sludge beds there at that disposal plant at Lawton? A. Not to my knowledge. Q. If the city is operating a plant by using one compartment until that compartment is filled full with sludge, then turning the raw sewage in the compartment that is filled, stand for 30 or 60 days and then washing it out with water through a large hose line and letting the sludge empty into Cache creek through the outlet of the disposal plant, is the disposal plant being operated in the proper manner? A. No, sir. Q. How long should the sludge be allowed to stand in one of the compartments of the disposal plant there at Lawton, to properly ripen? A. Approximately six months."

The city offered in evidence the testimony of John Langwell, who was the superintendent of the water works system of the city of Lawton, and it appears that said witness had superintending control of the sewage disposal plant of the said city, and he testified in part:

"Q. How long do you let the sewage stand there before you wash it out again? A. In the summer time we generally aim to clean it out every 60 days, but in the winter we let it run as long as three months. Q. How do you clean it out? A. We have the valve pits close to the compartment we are going to clean and we fill that with water and we take the fire hose and cut that up and we keep using this water with the fire hose and open up the valves and let enter Cache creek."

The testimony as shown by the record is conclusive on the proposition that solids in large quantities passed from the disposal plant into Cache creek and were carried by said stream across the plaintiff's farm. In our judgment, the evidence clearly showed that the city was negligent in the manner in which it conducted the said disposal plant.

It is also shown by evidence that said disposal plant by the expenditure of money could have been repaired and placed in such a condition as to prevent the nuisance from which the plaintiff complains.

The legal question here raised by the defendant has been formerly presented to this court in prior cases, and it appears that this court has clearly set forth the rules of law which must govern in the instant case.

In the case of Town of Norman v. Ince, 8 Okla. 412, 58 Pac. 632, Mr. Justice Hainer, delivering the opinion of the court, said:

"Applying these well-settled principles to the case under consideration, it must follow that a municipal corporation, in the exercise of its corporate powers to construct and maintain public works, has no right to collect water by artificial means, and discharge it, or permit it to discharge or overflow upon the premises of an adjacent freeholder, so as to interfere with his possession. And in this respect a municipal corporation stands upon the same footing as a private individual, and incurs the same liability. Manifestly, for a municipal corporation to collect water by artificial means, such as a water standpipe, and conduct it in such a careless and negligent manner as to allow it to overflow and flood the premises of an adjacent lot owner, is such an invasion of private property as to constitute an appropriation of it to the public use, and the principle exempting municipal corporations from liability arising from damages occasioned by the exercise of their discretionary powers in the construction and maintenance of public works does not apply, and the corporation is liable for damages resulting therefrom. The same rule of law which protects the right of the property of one citizen against the invasion of another citizen must protect it from similar aggressions on the part of municipal corporations. The petition of the plaintiff states a good cause of action, and the demurrer was therefore properly overruled."

In the case of City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867, Mr. Chief Justice Hayes, speaking for the court, said:

"In case of doubt respecting the character of the injury courts are inclined to favor the right to bring successive actions, and therefore hold that the injury is not permanent. Section 1039, Sutherland on Dam.; Schlitz Brewing Co. v. Compton, 142 Ill. 511, 32 N. E. 693, 18 L. R. A. 380, 34 Am. St. Rep. 92; City of Nashville v. Comar et ux., 88 Tenn. 415, 12 S. W. 1027, 7 L. R. A. 465. In the last-mentioned case the opinion, which was delivered by Lurton, J., now Associate Justice of the Supreme Court of the United States, ably reviewing the entire question and the diverging cases thereon, concludes with this language:

"'It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, where the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that, where the cause of the injury is one not presumed to continue, the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance.'"

In the case of City of Mangum v. Sun Set Field, 73 Okla. 11, 174 Pac. 501, this court said:

"If in the instant case it had been made to appear that there was want of care in the construction and operation of the sewer system, or that by the exercise of ordinary care injury could have been avoided, the rule laid down in City of Ardmore v. Orr, supra, would apply, and the plaintiff could maintain successive actions for injuries recurring within the period of limitation. We cannot presume negligence."

In the case of City of Lawton v. Johnstone, 92 Okla. 280, 219 Pac. 414, in paragraphs Nos. 1 and 2 of the syllabus of said opinion, this court said:

"1. Where an action is brought against a municipal corporation for damages because the sewage disposal plant of such corporation has not been kept in repair, and because of negligent operation thereof, a recovery for injury resulting therefrom is not barred because of a former action and recovery, either for permanent injury because of the proximity of such sewage disposal plant to plaintiff's property, or for loss and inconvenience occasioned by such negligent operation through some other period than that complained of in the instant case.

"2. Successive recoveries are authorized under the law, for damages accruing from time to time because of the failure of a municipal corporation to keep its sewage disposal plant in repair, and because of failure to operate the same in a proper manner."

From the above authorities it seems clear to us that when the plaintiff below by competent evidence showed that the defendant was negligent in the manner in which it operated the disposal plant, and it was further shown that by the use of labor and money the city could have repaired the defect in said plant, and said acts of negligence occurred within two years last past prior to the commencement of plaintiff's cause of action, under this showing by the plaintiff the statute of limitations could not be pleaded in bar of plaintiff's right of recovery.

The defendant's proposition No. 2 contends that the court committed error in permitting proof tending to show for what purposes plaintiff might use the waters from said creek but for the alleged pollution of the said waters upon the part of the defendant.

We have examined the evidence upon this point, and do not think there was error in permitting the same to be introduced.

The defendant's third proposition is that the court committed error in rendering judgment on that part of the verdict of the jury in answer to special interrogatories which involved the sum of $115 for the expense of digging a well and building fences. From an examination of the evidence we do not think the evidence in any manner justified the specific recovery for these two items.

We have examined propositions 4 and 5 of the defendant's contentions, which relate to the negligent operation of the septic tank, as well as the amount of general damages which plaintiff recovered. In our judgment there is no merit in defendant's contentions upon these two latter propositions.

The judgment is affirmed save and except as to the specific judgment for the sum of $115 allowed plaintiff for sinking a well and building fences on his farm, and the district court is directed to modify said judgment by reducing the same to the extent of $115.

BRANSON, C. J., and PHELPS, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note—See under (1) 37 C. J. pp. 883, 884, §249; p. 888, §251. (2) 34 C. J. p. 842, §1251; 37 C. J. p. 883, §249. (3) 40 Cyc. p. 602 (Anno).