## COMAR OIL CO. et al. v. RICHTER.

No. 18948.    Opinion Filed Feb. 18, 1930.

As Corrected March 4, 1930.

Koerner, Fahey & Young, Louis B. Woodson, F. C. Duvall, Robinson, Mieher & Jones, H. H. Booth, Ramsey, De Meules & Martin, William H. Zwick, C. L. Billings, Redmond S. Cole, and H. S. Gurley, for plaintiffs in error.

T. J. Sargent and Irving D. Ross, for defendant in error.

REID, C. In this case the plaintiff, by his amended petition filed June 5, 1925, alleged, in substance, that for more than 20 years he had been the owner and lived upon the N.E.¼ of section 36, township 25 north, range 1 west in Kay county, Okla., and was also the owner of a valid lease upon the N.W.¼ of section 36 in said township. He described with particularity certain lands where each of the defendants had been from May 1, 1923, and were then operating their

respective leaseholds for oil and gas in the vicinity of plaintiff's land; that plaintiff's lands and lease, and also the lands where defendants were conducting these operations, were situated in the territory drained by Bird's Nest creek, which creek ran through plaintiff's land; that his land and the school land were each fertile and first class for agricultural purposes; that said creek was subject to overflow, depending upon the magnitude of the flood, and at times covered certain parts of his fee simple and leased lands; that the defendants in their exploration for oil and gas brought to the surface large quantities of crude oil, base sediment, salt water, and other oil field refuse, and negligently permitted the same to drain into said creek; that said substances had so polluted the waters of said creek running through his farm since May 1, 1923, as to render the same unfit for live stock, and that the overflows of said creek at certain times, carrying said substances to his said lands, tended to destroy all vegetation and crops, and was continuing to do so. In one count of his petition he prayed for injunctive relief against the acts of the defendants, and in another count he alleged that by said acts of the defendants certain parts of the lands had been deprived of their fertility. He asked judgment for the damage to said lands, resulting directly from overflows in the months of May and June, 1923; $12,000. as to the fee simple land, and $2,000. damages as to the school lands.

A supplemental petition was filed two crop years thereafter, in which he alleged facts showing, in connection with his original petition, that, by the acts of defendants and by subsequent overflows, his own lands had become totally and permanently destroyed to his damage in $20,000, and as to his leasehold he had been damaged $3,000.

The court thereafter overruled a motion by defendants to require plaintiff to separately state and number the causes of action stated in his petition, and also to elect as to whether he sued for partial damage to the lands, and further for injunctive relief, or whether he was proceeding on the theory of permanent total destruction of the land. The defendants then answered by what amounts to a general denial; alleged that the supplemental petition constituted a departure, and also pleaded the two years' statute of limitations. In this state of the pleadings, on a trial to a jury in June, 1927, a verdict for $15,000 was returned, and the defendants appealed.

The defendants first suggest that the court erred in refusing to require plaintiff, before the trial proceeded, to elect whether he would proceed for damages upon the theory that his farm was partially destroyed, and that he was entitled to an injuction to prevent further damage, or upon the theory that his farm was completely and permanently destroyed, as the two theories were inconsistent. This motion, in effect, and as applied directly to plaintiff's pleadings, was a request that plaintiff be directed to elect whether he would proceed upon his amended petition, or upon that petition together with the supplement thereto, and was really a renewal of the same motion directed by defendants at the petition before they answered, which was overruled. Upon examination of the original petition, it is evident that plaintiff sought recovery of partial damages to his lands and an injunction to prevent further damage. And by his supplemental petition, he sought his proper relief under the facts occurring since he filed his amended petition. This practice is authorized by section 323, C. O. S. 1921.

We have carefully examined the record bearing upon this request made at the beginning of the trial, and find, in substance, that, in response to the motion and inquiry by the court, plaintiff's counsel stated he would proceed to attempt to recover for total permanent damages; that defendants' counsel then stated they were not ready upon the injunction, but were "ready to meet the issue of permanent damages as last pleaded, and the amount thereof," but would desire further time if the court decided to hear the injunction feature. Whereupon the court stated the case would proceed as to the damage action, and if after the trial either party desired to present additional evidence as to the injunction, it would be heard. The case proceeded for the damage, and a verdict was returned therefor. No mention was thereafter made of an injunction, and, of course, none was granted. We think that the record shows the plaintiff elected exactly as requested by the defendants. But, in any event, the defendants have failed to point out, and we are unable to discover how they could have been hurt by this procedure, and that is the final test to be applied. Section 2822, C. O. S. 1921.

The defendants contend that the court erred in giving instruction No. 11, in that there was no evidence showing permanent total damage to the entire home farm; and by subsequent assignment, claims error in giving of instructions Nos. 12 and 13, in

that the same permitted recovery for the usable value of the lease for 1924, when there was no evidence of damage in that year. In view of the fact that, by another assignment, the defendants also claim that the evidence does not support the verdict, we conclude it best to here set out instruction No. 11, and thereafter discuss the evidence. The instruction is as follows:

"You are instructed that if you believe from a preponderance of the evidence in this case that the defendants heretofore named, or any one or more of them during the time from May, 1923, to January 4, 1927, in operating their leases described in evidence, polluted or contributed to the cause of the pollution of the stream passing through the plaintiff's farm by causing or allowing crude oil, salt water, or base sediment, to run or escape from their wells or their leaseholds above plaintiff's land into Bird's Nest creek, and which by natural drainage found its way onto the plaintiff's land, and that, as a consequence thereof, naturally following, or which should have been reasonably expected as a result of the acts of the defendants, and that the plaintiff's farm was permanently damaged in any manner, or to any extent as claimed by him, then the defendants, or such of them as did so contribute to the cause of the injury, would be liable to the plaintiff in such amount as you find from the evidence was sustained, measured by the rules hereinafter given you."

By instruction No. 12, the jury, in substance, was told that if they found that defendant had likewise damaged the lands of plaintiff's school lease for the years 1924 and 1925, and the usable value of the lands for said years had thus been diminished, they would find the plaintiff his damages on that account.

By instruction No. 13 they were informed that, if they found plaintiff's home farm had been permanently damaged, the proper measure of damages would be the difference in the fair market value just before the damage and its value thereafter. As to the lease, they were told, in substance, that by the same rule they should find the difference in the usable value for the years 1924 to 1925.

It appears from the brief of the defendants that there is no contention but that they are liable for whatever damage plaintiff has suffered in the manner he complains of; but the extent of this damage is the real issue. The evidence of this we will now discuss. But it will be remembered that it is not necessary to review the whole testimony, but simply to here determine whether the evidence called for the instructions given, and also whether there is any evidence reasonably tending to support the amount of the verdict returned.

The plaintiff's testimony showed that he had owned the home place more than 30 years, and that he had a lease on the school land for 1924 and 1925. He planted 6 acres of oats and 115 acres of corn on his farm in 1925. He listed the corn and cultivated it three times. A little of the corn tasseled, but got no further. The oats made 5 or 6 bushels to the acre. He did not thresh them. The same spring on the school lease he planted in the same way 20 acres of oats on the north side, and 140 acres of corn. One hundred and fifteen acres of this corn had the same development as on the home place, and 25 acres on the east side, and outside the overflowed and polluted district made 40 bushels per acre. In 1926 he planted the entire home farm, and the larger part of the lease in corn. He cultivated it as in previous year except part only twice. It produced no corn except the east side beyond the overflowed district where he made 40 bushels to the acre.

As stated, a wheat crop on the land was destroyed by the overflow of his home place in 1923, when it was about ready to be harvested. Volunteer wheat came that fall, but it died in the spring before maturing.

The evidence of plaintiff was corroborated by other witnesses in many particulars not necessary to here set out. These witnesses lived in the vicinity of the land; had known it for years, and had observed the crops grown thereon before and during the years 1923 to 1926. Several witnesses testified as to the market value of the farm before it was overflowed with salt water and oil. They differently placed the value at from $16,000 to $20,000, and that the usable value of the 115 acres damaged on the lease was in different amount to as high as $12 an acre per year.

Upon this issue the defendants introduced testimony that the damage to the home farm and the usable value of the leased land was much less than stated by plaintiff's witnesses, and gave amounts which would not authorize the verdict. However, all this testimony simply created an issue for the jury, and its findings thereon must stand. And, as the charge fitted the evidence, there is no reversible error here.

In this connection the defendants contend that the court's charge authorized the jury to assess damages for the usable value

of the leased lands for 1924, when plaintiff, in fact, attempted to grow no crops thereon. There is evidence of damage to the fee simple lands justifying the full amount of the verdict. And there is further evidence that 115 acres of the leased land would have produced nothing if he had planted and cultivated it that year. These defendants are in no position to claim that this plaintiff should have cultivated this land when he would have received nothing therefrom.

The law by which the question of defendants' liability may be determined has been announced by this court in the cases of Comar Oil Co. v. Hackney, 119 Okla. 285, 250 Pac. 93; and Comar Oil Co. v. Richter, 127 Okla. 153, 260 Pac. 60. The instructions complained of were proper under the evidence, and the evidence is sufficient to sustain the amount of the verdict.

The defendants introduced a chemist who testified as to the amount of salt he found in the soil he took from different places on plaintiff's land and lease. And in this connection, complain of the court's refusal to permit this witness to answer the question as to whether the quantity of salt he found would affect the fertility or productivity of the land. There was no error in this ruling of the court for the reasons: (a) He failed to qualify as an expert on the question; and (b) the record does not disclose what his answer would have been.

It is next suggested by the defendants that, having introduced the evidence as to the amount of salt in the soil of these lands, the court erred in refusing to permit the introduction of an official government report upon the quantity of salt required to affect or destroy the productivity of soil. In the absence of the report, or some other evidence in the record as to what it contained, we are unable to find error was committed.

On cross-examination, the plaintiff was asked certain questions which were objected to by his counsel, and the objection sustained. This is assigned as error by the defendants. We have examined his testimony in chief in connection with the questions asked him by the defendants. The question did not relate to matters about which he testified in chief. It was therefore not error for the court to refuse to compel the witness to answer them.

As the case stands upon the briefs and the oral argument here, it seems not to be controverted that the defendants are responsible for whatever damage plaintiff has sustained; the only questions being whether

proper rules of law have been applied in determining the damage and whether the amount assessed by the jury is sustained by the evidence.

We have found no error of law, and there is evidence in the record reasonably tending to support the verdict. The judgment of the trial court is affirmed.

TEEHEE, HERR, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.