H. F. WILCOX OIL & GAS Co. et al. v. MURPHY.

*97 P. 2d 84.*

No. 27575.   Dec. 12, 1939.

Horace B. Clay, Jas. A. Veasey, Forrest M. Darrough, J. R. Ramsey, B. S. Griffith, Harry A. Campbell, W. M. Fleetwood, Jr., E. R. Hastings, W. F. Semple, W. P. Z. German, J. C. Denton, Richard H. Wills, I. L. Lockewitz, W. D. Abbott, Edw. H. Chandler, and Robt. F. Imler, all of Tulsa, A. D. Cochran, of Okmulgee, Wm. F. Pielsticker, of Wichita, Kan., J. E. Thrift, of Sapulpa, and G. P. Cantrell, of Bartlesville, for plaintiffs in error.

Cheatham & Smith, of Bristow, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error, herein referred to as plaintiff, for damages alleged to have been sustained as a result of salt water and general oil field pollution of a stream known as Little Deep Fork river.

The basis of plaintiff's claim is that during the year 1933, said stream overflowed several times whereby salt water and oil were carried over and deposited upon the land where plaintiff had planted and had growing certain crops, corn, oats, cotton, whereby certain of his said crops were destroyed and others injured, and the fertility of the soil was so impaired as to cause a decreased crop yield from said land for the year 1934. Another item of alleged damage was the loss of five cows alleged to have been killed by drinking polluted water in said stream. There was also a claim for a decreased yield of pecans for both years from trees growing upon said land, alleged to have been caused by the pollution of the water which overflowed said land during the year 1933.

Plaintiff alleged that he was a tenant in possession of said lands.

The petition contains the usual allegations relating to defendants permitting oil and salt water to escape from their wells and refineries and flow into the stream, causing the alleged damages to his crops, as a result of two floods or overflows of the stream in 1933, one on April 5th, 6th, 7th, and 8th, the other on or about the 10th, 11th, and 12th days of May. As to the crops damaged in 1933, plaintiff itemized his claims in the amount of $325:

| | |
|---|---|
| 10 acres of oats, planted in Feby., destroyed in April | $ 35.00 |
| Same 10 acres replanted in sudan grass in May, damaged | 25.00 |
| 20 acres of corn, planted in March, destroyed in April | 80.00 |
| Same acreage replanted in corn in May, destroyed in May | 80.00 |
| 20 acres of cotton, planted and destroyed in May, replanted | 80.00 |
| 10 acres Kaffir and Higear, planted and destroyed in May, replanted | 25.00 |
| | $ 325.00 |

And for "Damages to above crop of corn, cotton and kaffir and higear by reason of pollution of soil, 1933," the claim was in the amount of $800:

| | |
|---|---|
| Damage to 20 acres of corn, loss in yield, 400 bu. at 50c | $200.00 |
| Damage to 20 acres of cotton, loss in yield, 6 bales at $50.00 | 300.00 |
| Damage to 10 acres kaffir and higear, in yield 6 T. at $10 | 60.00 |
| Loss to pecan crop, 4,000 lbs. at 6c | 240.00 |
| | $ 800.00 |

For the year 1934, plaintiff itemized and specified as follows:

| | |
|---|---|
| Damage to the above crops for the year 1934 by reason of loss of yield from pollution of soil. | |
| 20 acres of cotton, loss in yield 3½ bales | $195.00 |
| 30 acres corn, loss in yield, 300 bu. | 300.00 |
| 10 acres kaffir, loss in yield, 3 tons | 60.00 |
| Loss in yield to pecan crop, 2700 lbs. at 12c | 324.00 |
| | $ 879.00 |

To the above he added the claim of loss of five cows in 1933, of the value of $40 each, making a total claim of $2,204.

Defendants answered separately. The substance of their defense as a whole is: That the stream was known to be an overflow stream and was known to have been polluted for many years prior to 1933; that plaintiff leased the land and entered into possession each year with full knowledge of the conditions then existing and assumed the risk thereof; that plaintiff was negligent in exposing his stock to the known danger, and that the right of action on account of the pollution accrued to the owners of the land and not to the tenant and the same was barred by the statute of limitations.

At the close of plaintiff's evidence defendants demurred. The demurrers were overruled, whereupon plaintiff dismissed as to two items, because the evidence showed as to these the damage occurred in the overflow of April 6, 7, and 8, 1933, and the action was not commenced until April 29, 1935, and more than two years after the alleged injury occurred.

Thereupon defendants moved for withdrawal from the jury's consideration of

the item for the loss of the five cows, upon the ground and for the reason "that the evidence shows that plaintiff could have avoided this item of damage." The motion was denied, and defendants excepted.

Thereupon defendants moved the court to take from consideration of the jury all items of damage claimed to have been sustained in the year 1934, for the reason that "all such damages, if in fact they were sustained, were damages to the freehold for which plaintiff in this action cannot recover, but accrued solely to the landowner." This motion was also overruled, and defendants excepted.

At the close of the evidence defendants moved for a directed verdict, which motion was overruled, whereupon the cause was submitted to the jury. A verdict was returned for plaintiff in the sum of $767.-68, upon which verdict, after unsuccessful motion for new trial, judgment was entered, and defendants appeal.

Defendants first contend that the court erred in regard to the question of the statute of limitations.

Plaintiff sues and prosecutes this action as a tenant, although the evidence shows he owns an interest in the land. The uncontradicted evidence is that the stream was known as an "overflow stream," and had been in a state of pollution for nearly 20 years; that plaintiff well knew the situation long before the year 1933.

The watershed of the stream above the land is in area about 150 square miles, 20 miles or more long and from eight to ten miles wide. The oil fields from which the pollution came were developed about 1914. The fields were known as the Cushing-Bristow fields. At one time, about 1922, there were about 1,800 producing wells in the area. At the time of the trial there were about 1,100 producing wells. There was evidence to the effect that the field would likely continue to produce for some years, that is, for an indefinite period. It therefore appears that the oil field is regarded as a "permanent structure"; that its operation has for many years been attended with the escape of pollutive substances, particularly salt water, oil and base sediment, by reason of which the stream has been for a like period polluted. There is some evidence to the effect that the escape of the pollutive substances mentioned is a necessary incident to the operation of the oil field; that it is impossible to abate the same.

The question of when an action must be instituted to recover damages growing out of the pollution of streams is one of diversity of opinion.

Prior to the extensive development of the oil and gas producing industry in this state most of the claims arose from the pollution of streams by or from sewerage systems in the cities and towns.

The general rule then was that where the structure comprising the source or cause of the pollution was capable of abatement by the expenditure of money or labor, the same was considered as temporary, in which case damages could be recovered for only such injury or injuries as had been sustained within two years next preceding the commencement of the action, and successive actions could be maintained for injuries received thereafter, if commenced within two years after such subsequent injuries were sustained.

But if the structure comprising the source or cause of the injury was not capable of abatement by the expenditure of money or labor, then the cause of the injury was deemed permanent, and only one action could be maintained, which included past and prospective injuries. In such case the action could only be maintained if commenced within two years after the first injury growing out of such pollution. In some cases, however, it has been held that such action could only be maintained if commenced within two years after the erection of the structure without regard to when the first injury was sustained.

City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867, states the distinction between permanent and temporary injuries as follows:

"For negligent injuries to realty which

result from a cause susceptible of remedy or abatement, the owner is entitled to recover therefor only such damages as had accrued on account of the impaired or lost use of his property up to the time of the commencement of his action. For injuries resulting from permanent cause, the owner may recover in a single action his entire damages, to wit, that amount which represents the permanent depreciation of the realty in value in consequence of the injury."

That a cause of action may or may not accrue at the time of the erection of a permanent structure from which injury may thereafter occur is shown from the rule stated in Pahlka v. Chicago, R. I. & P. R. Co., 62 Okla. 223, 161 P. 544, wherein it is held:

"In cases of injury from negligence in a permanent structure, where actual injury is not the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions, the cause of action rises at the time of actual injury, and not at the time of the erection of the structure; and, in cases of injury from permanent cause, where, assuming the continuance or recurrence of ordinary conditions, the injury is the obvious or necessary result, the cause of action arises at the time of the creation of the cause, viz., the erection of the negligent structure."

Oklahoma City v. West, 155 Okla. 63, 7 P. 2d 888, overrules City of Mangum v. Sun Set Field, 73 Okla. 11, 174 P. 501, insofar as it holds that a sanitary sewer system operated by municipal corporations, emptying sewage into a watercourse, without claim of negligence in the construction and operation of a sewer system, constitutes a "permanent injury," and that d a m a g e s occasioned thereby may all be recovered in one action and successive actions may not be maintained.

Oklahoma City v. West, supra, holds:

"In a suit to recover damages caused by the discharge of unpurified sewage into a watercourse to the damage of a riparian owner, a contention that since a sewer system is a permanent structure, in the absence of an allegation of negligence in the adoption of the plan of construction of the sewer system or in a failure to construct the system in accordance with the plan adopted, the nuisance should be considered permanent, is unsound, for the damages in such case are not caused by the so-called permanent structure, but by the manner of its use. Mangum v. Sun Set Field, 73 Okla. 11, 174 P. 501, to the contrary is overruled."

And:

"Judicial notice is taken of the fact that sewage can be easily and successfully purified by the use of modern appliances, so that a nuisance caused by the discharge of unpurified sewage into a watercourse is, as has heretofore been declared by this court, a temporary nuisance within the rule that a nuisance is temporary that can be abated by the expenditure of money or labor."

In this state, then, there is no longer a permanent or nonabatable structure comprising the source or cause of injury flowing from the operation of a sanitary sewer system by a municipality, whereby pollutive substances are cast into a stream to the injury of a riparian owner. Successive actions may in all such cases be maintained. As applied to pollution from oil and gas wells by the escape of oil and salt water, the general rule is that in legal contemplation the structure or cause of the pollution is abatable in that, ordinarily, it will be assumed that it is possible to so operate the well as not to cause injury to another's property, and when the well is so operated as to result in injury, then, and not until then, does the cause of action accrue. Richards v. Flight, 97 Okla. 9, 222 P. 564.

Again, in Carter Oil Co. v. Kerley, 109 Okla. 69, 234 P. 737, it is held:

"A violation of the provisions of section 7969, Comp. Stat. 1921, providing that in no case shall waste oil be permitted to flow over the land and that salt water shall not be allowed to flow over the surface of the land, constitutes a nuisance which in legal contemplation can be abated by the expenditure of labor or money."

And:

"When a cause of injury is abatable, either by an expenditure of labor or

money, it will not be held permanent, and when not permanent the statute of limitations does not begin to run until the injury is suffered."

In the opinion it is stated:

"Cases of the character of the one here presented are not based upon the theory that the construction of the defendants' oil producing works constitutes an original wrong, but that the defendants have negligently and unnecessarily permitted oil and salt water to pollute the stream and thereby damage the property rights of another."

Therein is also quoted with approval from Nashville v. Comar, 88 Tenn. 416, the following:

"It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong when the cause of injury is of such a nature as to be abatable, either by the expenditure of labor or money. And that where the cause of the injury is one not presumed to continue, that the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance."

However, in Comar Oil Co. v. Hackney, 119 Okla. 285, 250 P. 93, it is said that it was conceded that it was impossible by any reasonable and known means on the part of the defendants (operators of the oil and gas fields), and as to the consequent damages to plaintiffs' lands, and it was held that the plaintiffs were entitled under the measure of permanent damages to recover for partial permanent damages to their farms, and that a judgment rendered accordingly was a bar to any recovery by plaintiffs for such wrongful acts, past, present, and future, to a particular area, but is not a bar to actions by plaintiffs for such tortious acts of defendants thereafter as may damage other portions of the lands not included in the judgment, and it was then held:

"The rule that a violation of section 7969, C. O. S. 1921, prohibiting certain refuse from oil or gas wells to run into a stream used for watering stock, requiring such refuse to be stored upon the premises and immediately burned or transported, and in no case permitted to flow over the land, constitutes a nuisance, which, in legal contemplation, can be abated by the expenditure of labor or money, is a general rule, but is not applicable to a state of facts in a case wherein the rules of paragraphs 1 and 2, supra, where it is conceded that it would be impossible by any known means and by any reasonable care and diligence to prevent such escapement of refuse, in consequence of which lands were permanently damaged."

The defendants herein contend that the holding in Comar Oil Co. v. Hackney, supra, is the basis and the sole basis for the subsequent holding of this court that permanent damages may be recovered for the injury to real property resulting from pollution caused by the escape of salt water, oil, etc., from wells in violation of section 11580, O. S. 1931.

The defendants also contend that if it be proved or conceded that the "structure" (the source or cause of the pollution of the stream) is not abatable, the law allows but one action in which all damage to follow future pollution is to be recovered, and the law denies any future recovery for damages sustained to the same land for which recovery was had.

There is no merit in this contention.

In the Kerley Case, supra, there was no admission nor proof that the cause or source of the pollution was not abatable. In the absence of such showing, the rule stated in Richards v. Flight, supra, was applied.

The fourth paragraph of the syllabus in Comar Oil Co. v. Hackney, supra, is:

"Whether the source or cause of permanent damages under the paragraphs, supra, may be susceptible of remedy or abatement by the expenditure of labor or money, the damages to the realty are permanent if the injuries to the lands themselves are not susceptible of abatement or remedy by the expenditure of labor or money."

The effect is to say that if the injury to real property be such that it cannot be abated or remedied by the expenditure

of labor or money, the damage to the realty will be treated as permanent, and in an action to recover damages for such injuries it matters not whether the cause of the injury be nonabatable (permanent) or abatable (temporary).

The recovery of damages is based upon the difference between the market value of the property before and after the injury. There is no requirement that prospective injuries to other portions of the real property be included in such an action. A cause of action for damages, referred to as permanent, accrues when the injury occurs, particularly with reference to injury to the second or additional area.

There is, then, no real conflict between Carter Oil Co. v. Kerley, supra, and Comar Oil Co. v. Hackney, supra. The former case holds that the cause of action accrues when the injury is sustained where the cause of the injury is or may be assumed to be abatable. The latter case holds that it makes no difference whether the cause of the injury is abatable if the injury itself be such as may not be remedied by the expenditure of labor or money.

There is no conflict between Comar Oil Co. v. Hackney et al. and Pine v. Duncan, 179 Okla. 336, 65 P. 2d 492, for while there is no discussion in the opinion of the question whether the cause of the injury in the Pine Case was abatable, if under the rule announced in Comar Oil Co. v. Hackney et al. it makes no difference, there was no occasion to discuss the question.

Neither is there conflict between Comar Oil Co. v. Hackney, supra, and Wilcox Oil & Gas Co. v. Johnson, 184 Okla. 198, 86 P. 2d 51. The damages therein sought were for permanent injury to the land itself, and, under Comar Oil Co. v. Hackney, the cause of action accrued when the injury occurred.

Wilcox Oil & Gas Co. et al. v. Allen, 184 Okla. 196, 86 P. 2d 55, is somewhat different in that the question of abatability of the structure was in the case, and by stipulation and other evidence it was shown that there the land itself had been damaged more than two years before the action was commenced. In the case at bar the most that appears is that the stream had been polluted for a number of years to the extent that its use as a source of water supply for stock had been destroyed. Overflows had in fact occurred, but there is no showing that the land itself or the fertility of the soil on the part overflowed has been injured permanently or otherwise. The evidence as to such injury is to the contrary. All that is claimed for the year 1933, aside from loss of cattle, is for damage to crops destroyed and injury to crops later planted on the same land during the same year.

As to that particular claim we hold that the action was not barred.

While there was no error by the trial court in refusing to hold as a matter of law that plaintiff's cause of action in its entirety was barred by the statute of limitations, the judgment must be reversed on other grounds.

In instruction No. 12, on the measure of damages, the court instructed the jury as follows:

"* * * The proper measure of damages for some of the items involved is as follows: for crops planted and in a growing condition, destroyed, and thereafter replanted, cultivated and later harvested, the difference between the reasonable market value of the crop, which, as shown by the evidence, would be raised on such land had not the overflows occurred and the market value of such crops actually raised."

And:

"For crops planted which came up and thereafter were destroyed, the value of such crops if they had been permitted to grow to maturity."

And:

"If you find from a preponderance of the evidence that there were a number of bearing pecan trees within the overflow portion of plaintiff's land, and that they were damaged by reason of polluted waters standing around them on said land, and that on account of such pollution the yield of pecans was greatly af-

fected and reduced, then, and in that event, the actual yield of such pecans for the years complained about and the natural yield that the proof in this case would show the same to have been had there been no pollution of such trees and the land around them."

The instruction is clearly erroneous in that under the evidence of plaintiff the reasonable cost of harvesting and marketing should have been deducted. Plaintiff's evidence was as to the market value of the pecans per pound. Necessarily there would have been expense in gathering or harvesting. There was no evidence as to the value of the pecans in the grove or on the trees.

The rule on the measure of damages for destruction of growing crops is stated in Chicago, R. I. & P. Ry. Co. v. Turner, 168 Okla. 465, 33 P. 2d 612, as follows:

"In a suit for damages for the destruction of a growing crop, such damages are to be estimated as of the time of the injury, and the measure to be applied is compensation for the value of the crops in the condition in which they were at the time of their destruction.

"In arriving at the value of a growing crop, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the cost of its gathering, preparation and transportation to market. The difference between such probable value in the market and cost of finishing the cultivation and gathering, preparing and transporting to market will ordinarily represent the value at the time of loss with as much certainty as any other method." Carter Oil Co. v. Holloway, 130 Okla. 272, 267 P. 274.

Where planted or growing crops are totally destroyed, the question is always the value of such crops at the time of the destruction. Likewise, where such crops are not totally destroyed, the question always is: What was the difference in value of such crops immediately before and immediately after the injury? This question was not presented to the jury as to "crops planted which came up and were thereafter destroyed."

It is further contended that the trial court erred in refusing to withdraw from the jury the question of damages to plaintiff's crops for the year 1934.

Plaintiff did not allege and did not prove that any salt water, oil, or other pollutive substances were cast upon the land during the year 1934.

He bases his entire claim for damages for that year upon the alleged fact that the land itself was so polluted by the floods of 1933 that its fertility was so impaired that the crops raised thereon the following year were greatly reduced from that which they would have been had the pollution during the year 1933 not occurred.

It is clear that plaintiff's claim as to the year 1934 is based entirely upon injury to the soil itself, whereby its fertility was impaired. For injury of this nature a cause of action accrues to the owner of the land. If the injury be capable of abatement, the measure of damage would be the decrease in rental or usable value of the land. If the injury be not capable of remedy, then the measure of damages would be the decrease in the market value of the land just before and just after the injury.

If plaintiff's lease was for a term covering the two years, his measure of damage for the year 1934 would be the difference in the rental value of the land without the pollution and the rental value thereof with the pollution.

If his lease was from year to year, the cause of action for the year 1934, if any, accrued only to the owner of the land, for in such case the tenant would take the land for the year 1934 with full knowledge of its impaired condition and would be in no position to claim damages for decreased production. Under the evidence of record the trial court should have withdrawn the question from the jury.

Defendants offered an instruction which in substance would have told the jury that the verdict should be for defendants if plaintiff knew or by the exercise of due care could have known that

the stream traversing his land was polluted with oil field refuse, and notwithstanding such knowledge permitted his cattle to have access to the waters therein, and to drink therefrom.

They contend it was error to refuse this instruction. The contention cannot be sustained. There is presented the question of contributory negligence, and the instruction was entirely too broad in not being limited to damages to cattle. Instruction No. 15, offered by defendants and refused by the court, is subject in part to the same objection.

In this state the court cannot say that if a plaintiff does or fails to do a certain thing, then he is guilty of contributory negligence, or has assumed the risk. Such questions are always questions of fact for a jury.

For the errors pointed out, the judgment is reversed and the cause is remanded, with directions to grant the defendants a new trial.

BAYLESS, C. J., and OSBORN, CORN, DAVISON, and DANNER, JJ., concur. GIBSON and HURST, JJ., concur in conclusion. WELCH, V.C.J., absent.