McLaughlin v. City of Hope.

Opinion delivered March 31, 1913.

1.  Pleading—motion to make definite.—Where a complaint states a cause of action defectively the defect is reached by motion to make more definite and certain and not by demurrer. (Page 445.)

2.  Pleading—sufficiency of complaint on demurrer.—When the facts stated in a complaint with every reasonable inference deducible therefrom constitute a cause of action the demurrer should be overruled. (Page 445.)

3.  EMINENT DOMAIN—MUNICIPAL CORPORATIONS—SEWER SYSTEM BE-
    YOND CORPORATE LIMITS.—Cities and towns have power to open,
    construct and keep in order and repair sewers and drains and
    enter upon and condemn private property for such purposes,
    outside the corporate limits of the city. Sections 2906, 2920, Kirby's
    Digest.  (Page 446.)

4.  EMINENT DOMAIN—LIABILITY OF MUNICIPAL CORPORATION FOR POLLUT-
    ING STREAM.—The owner of the land on a stream has the right
    to have the water which flows from the land of the upper owner
    in as pure and wholesome a condition as a reasonable and proper
    use of the stream by the upper owner will permit, and while
    he must submit to the natural wash and drainage coming from
    cities and towns above, under art. 2, § 22, of the Constitution,
    a city will be liable to him for polluting the stream with sewage
    to such an extent as to render his leasehold worthless and make
    an abandonment of his property necessary, since the city is dam-
    aging his property for a public use.  (Page 446.)

5.  MUNICIPAL CORPORATIONS—POLLUTING STREAM—DAMAGE TO PROPERTY
    BELOW.—The turning of sewage into a branch by a city and pollut-
    ing the water thereof to the damage of riparian owners below is
    a damage done to said property for public use within the meaning
    of art. 2, § 22, Constitution of 1874, for which the city must make
    compensation.  (Page 449.)

6.  EMINENT DOMAIN—POLLUTION OF STREAM BY CITY—PERMANENT IN-
    JURY—DAMAGES.—When the action of a city in constructing its
    sewer system so as to turn its sewage into a branch indicates an
    intention to acquire a permanent right to continue to so use and
    pollute the stream, the damages to a riparian owner below
    should be assessed upon that basis as though the city were pro-
    ceeding to acquire it under its power of eminent domain.  (Page
    449.)

7.  ACTIONS—MUNICIPAL CORPORATIONS—DAMAGE TO PROPERTY.—An in-
    dividual has a right to bring an action against a municipal cor-
    poration for damages for polluting with sewage a stream flow-
    ing by plaintiff's land.  Kirby's Digest, § § 2903-5.  (Page 449.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

P. H. McLaughlin brought suit for damages against the city of Hope, arising from the construction of its sewer system, which discharged the sewage of the city into Hanegan's branch, which flowed through certain lands, the property of S. B. Henry, part of which upon

the branch had been leased by him for a mill site, and upon which a saw mill had been erected for the purpose of manufacturing certain timber, belonging to said Henry, and purchased by McLaughlin of him, into ties.

The complaint alleges that the mill was located on said stream of water for the purpose of using it in making steam to propel the machinery for manufacturing the timber into finished ties. That after leasing the mill from the owner of the land, he moved his mill and located it on the banks of the branch and used the water therefrom in the operation of the machinery. That after the mill had been located and put in condition for operation and the contract for the manufacture of the ties entered into and some of the timber cut and delivered at the mill and some ties manufactured, that the sewage from the city of Hope was discharged into Hanegan's branch and carried on down through and crossing the lands described in the complaint and so polluted the water therein as made it unfit for generating steam and appellant was compelled to abandon the use of it for that purpose and there was no other water on the premises that could be used for the purpose of operating the mill. It alleged further that the city of Hope, its agents, officers and servants so constructed its sewers as to discharge the sewage from said city of Hope into said branch and to cause noxious odors to spread over and about said mill site and mill premises to such an extent that plaintiff was compelled to abandon the same; that said noxious odors rendered said mill premises uncomfortable, undesirable and unhealthful as a place for people to work; that as a result plaintiff was unable to get hands to help carry on the work, and that plaintiff himself was unable to endure the the noxious odors and was forced to abandon his said mill site. Damages were also claimed for the loss of profits that could have been realized on the manufacture of the timber into ties.

A demurrer was interposed and sustained to this

amended complaint and, from the judgment, dismissing it, plaintiff prosecutes this appeal.

*Jobe & Montgomery,* for appellants.

1. Appellants have a legal right to sue. 24 Cyc. 1056 (111); 4 Wash. 749; 31 Pac. 28; 74 Ill. 433; 71 Ark. 302; 13 N. E. 686; 73 Am. Dec. 66; 13 Cyc. 151.

2. If they have the right to sue for a legal injury, the city it liable. 84 Am. St. 902; Const. art. 2, § 22; 15 Cyc. 662; 98 Ark. 206; 94 Fed. 561; 77 Am. St. 335; 41 *Id.* 367; 42 *Id.* 840.

3. A legal injury was committed by the city in violation of private rights and it is liable for the damages. 14 Am. St. 319; 95 Ark. 297; 93 *Id.* 46; 51 Am. *St. Louis, I. M. & S. Ry. Co.* v. *Moss,* 75 Ark.64; *Murrell* v. *Henry,* 70 Ark. 163.

*O. A. Graves,* for appellee.

1. There is no bill of exceptions in the case. 71 Ark. 82; 70 *Id.* 364; 81 *Id.* 332.

2. The complaint states no cause of action. 54 N. E. 1062; 48 L. R. A. 707. No negligence or want of care or skill is alleged.

3. Municipal corporations are not liable for the negligent or tortious acts of their agents and servants. 49 Ark. 139; 73 *Id.* 447; *Ib.* 519.

Kirby, J., (after stating the facts). The allegations of the complaint are not as definite and certain relative to the damages claimed for the injury as should have been made, but where the complaint states a cause of action indefinitely the defect is reached by motion to make more definite and certain and not by demurrer. *St. Louis. I. M. & S. Ry. Co.* v. *Moss,* 75 Ark. 64; *Murrell* v. *Henry,* 70 Ark. 163.

When the facts stated in a complaint with every reasonable inference deducible therefrom constitute a cause of action the demurrer should be overruled. *Claxton* v. *Kay,* 101 Ark. 352; *Cox* v. *Smith,* 93 Ark. 373. Is a cause of action stated?

McLaughlin, the allegations of the complaint being true, moved his mill and set it up on the banks of this branch, first having acquired a site by lease from the

owner of the land, expecting to use the water of the branch in making steam for the operation of the plant, and there being no other water available and by the discharge of the sewage of the city into the stream polluting its waters and because of the noxious odors arising therefrom, he was compelled to abandon his mill site and move his mill. The owner of the land was also joined as a party to the suit.

It is contended by the city that no negligence, lack of skill or want of care in the construction of its sewer system is alleged and that it could not be held liable for the negligent and tortious acts of its officers in any event, under the authority of *Arkadelphia* v. *Windham*, 49 Ark. 139; *Collier* v. *Fort Smith*, 73 Ark. 447; and *Gray* v. *Batesville*, 74 Ark. 519.

Cities and towns in the State have power to open, construct and keep in order and repair sewers and drains and to enter upon and condemn private property for such purposes. Sections 2906, 2920, Kirby's Digest. If the statute does not expressly confer such power to be exercised without the city's limits, it is granted by implication, being indespensibly necessary to carry into effect the express power granted by the statute to open, construct and keep in order sewers and drains.

Our Constitution provides: ''Private property shall not be taken, appropriated or damaged for public use without just compensation therefor.'' Art. 2, § 22, Const. 1874.

Plaintiff does not seek to recover damages arising from the negligent, unskilful or wrongful construction of the sewer system, but only for discharging the sewage into the stream upon the lands of his lessor and polluting it to such an extent as to render worthless his leasehold estate as a mill site and make the abandonment of it necessary. The statute does not, as in some States, expressly authorize the discharge of the sewage into natural streams, or drains and creeks, and if it did the question would still remain whether, under the Constitution, the Legislature had any such power without

requiring compensation made to the owner of the stream. The owner of the land on a stream has the right to have the water which flows from the land of an upper owner in as pure and wholesome a condition as a reasonable and proper use of the stream by the upper owner will permit. He must also submit to the natural drainage and wash coming from cities and towns.

In 1 Lewis on Eminent Domain, section 60, it is said: "All the authorities agree that small streams, incapable of navigation, are wholly private property; that the title of the riparian owner extends to the middle of the stream."

And in section 61, "It may be laid down as a well settled principle that every proprietor over or past whose land a stream of water flows has a right that it shall continue to flow to and from its premises in the quantity, quality and manner in which it is accustomed to flow by nature, subject to the right of the upper proprietor to make a reasonable use of the stream as it flows past their lands. This right is a part of his property in the land and, in many cases, constitutes its most valuable element. It necessarily follows, therefore, that any violation of this right in the exercise of the power of eminent domain, is a taking of private property, for which compensation must be made."

In section 84, it is said that, "An injury to riparian rights for public use is a taking for which compensation must be made." "These riparian rights * * * are property and are valuable * * * and can not be abridged or capriciously destroyed or impaired. They are rights to which, once vested, the owner can only be deprived in accordance with the law of the land and if necessary that they be taken for public use it must be for due compensation." See also Mills, Eminent Domain, § § 79-1821; Gould on Waters, § 204; Wood on Nuisances, § § 332-427; Angell, Water Courses, § 457-8.

Our court has held that it is the right of each proprietor along the natural drain of each water course to

insist that the water shall continue to flow as it has been accustomed to do. *St. L. S. W. Ry. Co.* v. *Mackey,* 95 Ark. 297; *St. Louis, I. M. & S. Ry. Co.* v. *Magness,* 93 Ark. 46.

Nicholls on Eminent Domain, § 167, says: "No private riparian proprietor has the right to pour drainage or other noxious matter into a private stream, so as to materially and unreasonably pollute the water, or any constitutional right to pollute the water at all. Upon the question of whether a city or town may be authorized to gather the house sewage of its inhabitants and throw it into a private stream, without compensating the owners below, the cases, though not numerous, are in direct conflict, though the majority deny the existence of such a right. * * *"

After a review of the authorities in a well considered opinion, the Supreme Court of Oklahoma, in *Markwardt* v. *Guthrie,* 90 Pac. 26, 9 L. R. A. (N. S.) 1158, announces the conclusion:

"(1) That the settled doctrine of the English courts, as well as some of our State courts, is that a lower riparian proprietor is entitled to recover damages for the pollution of the waters of a stream by a municipal corporation, by the discharge of sewage into the stream, on the broad ground of common sense and natural justice; (2) that the Supreme Court of the United States and a number of the State courts base their decisions on the ground that it is a taking of private property for public use, within the meaning of the Federal Constitution; (3) that other States hold that it is a damage to property within the meaning of their constitutional inhibitions against the taking or damaging of property without just compensation; and (4) a number of the States hold that the lower riparian proprietor is entitled to recover damages for injury to his health, comfort and repose, on the ground that it is the maintenance of a nuisance. While these decisions are based upon different ground, yet, upon whatever ground they may rest, they all, with the exception of the decisions of the In-

diana courts, seem to uniformly hold that, under such circumstances, damages are recoverable; and many of them hold that, where the evidence is clear and convincing, injunction will lie to restrain the continuance of the nuisance.''

For other cases, denying the right of a city to discharge its sewage into private streams to the injury of the owners without compensation therefor, see *Mansfield v. Balliett,* 65 Ohio St. 451; 58 L. R. A. 628; *Platt Bros. v. Waterbury,* 48 L. R. A. 691, and cases in editor's note, 72 Conn. 351; 45 Atl. 154; 77 Am. St. Rep. 312.

If the turning of the sewage into the branch and the pollution of the water thereof to the damage of the riparian owners be not regarded as a taking of the property for public use, within the meaning of the Constitution, it certainly is a damage thereof for public use, within its meaning, for which compensation must be made. *Hot Springs Ry.* v. *Williamson,* 45 Ark. 429; *Dickerson* v. *Okolona,* 98 Ark. 206; *Tate* v. *St. Paul,* 56 Minn. 530; *Ashley* v. *Port Huron,* 35 Mich. 296; 24 American Report, 552. Since the city's action in constructing its sewer system so as to turn the sewage into said branch indicates an intention to acquire a permanent right to continue to so use it and pollute the stream, the damages to the owner should be assessed upon that basis and as though the city were proceeding to acquire it under its power of eminent domain. 1 Farnum, Water Rights, § 139-A.

McLaughlin having moved and set up his mill upon the banks of this stream under a lease, with the right to use the waters thereof in the operation of his mill and the mill site being rendered worthless and its value for the purpose for which the land was leased destroyed by the draining of the sewage of the city into the branch, was entitled to damages to the extent of the injury to his leasehold interest. *Nicholls Eminent Domain,* § 174; 2 Lewis, Eminent Domain, §§ 719, 950.

Our statute authorizes the bringing of a suit where a corporation authorized by law to appropriate private

property for its use may have done so, and appellants had the right to prosecute this suit against the city of Hope a cause of action being sufficiently alleged in their complaint. Sections 2903-5, Kirby's Digest.

The court erred in sustaining the demurrer to the amended complaint and the judgment is reversed and the cause remanded with directions to overrule the demurrer, and, if necessary, permit such amendment to the complaint as will render it more definite and certain as to the amount of damages claimed and for trial in accordance with law.