# CITY OF MANGUM v. SUN SET FIELD.

No. 8931—Opinion Filed July 9, 1918.

Rehearing Denied Aug. 13, 1918.

(174 Pac. 501.)

1. **Action—Splitting Cause of Action—"Permanent Injury"—Recovery of Damages.**

The injury occasioned to a riparian owner by the operation of a sanitary sewer system of a municipal corporation, emptying its sewage into a water course, thus polluting such water course so as to constitute a nuisance, there being no negligence charged against such municipal corporation in the construction and operation of said sewer system, is a "permanent injury." The damages occasioned by such injury may all be recovered in one action, and successive actions therefor may not be maintained.

2. **Limitation of Actions—Nuisance—Sewer System.**

The cause of action for injury occasioned by such operation of such sewer system arises and the statute of limitation begins to run from the time the municipal corporation begins to operate such sewer system and occasions such injury.

(Syllabus by Rummons, C.)

Error from District Court, Greer County; R. W. Higgins, Assigned Judge.

Action by Sun Set Field against the City of Mangum. Judgment for plaintiff, and defendant brings error. Reversed.

J. C. Counts, for plaintiff in error.

M. O. Counts, S. B. Garrett, and Wilkins B. Garrett, for defendant in error.

Opinion by RUMMONS, C. This action was commenced by the defendant in error, plaintiff below, on November 20, 1913, to recover damages consisting of the depreciation in value of a tract of land owned and occupied by plaintiff and of the loss of the usable value of said land because of the pollution of a water course by a sanitary sewer erected and operated by defendant. The petition alleges that in June, 1907, the defendant wrongfully and unlawfully, and without plaintiff's consent and over his protest, erected and constructed a sanitary sewer system for the city of Mangum, and emptied the same at a point at or near the northeast corner of said land, and has ever since said last-named date maintained its sewer system and emptied the same on defendant's said land, and caused the same to flow in the channel of Salt Fork creek to near the southeast corner of said lands, and that by reason thereof said defendant did then and there, and has continuously thereafter, wrongfully and unlawfully polluted and disturbed the waters of said creek, so that it has been foul and impregnated with poisonous and noxious substances, and has emitted a noisome and poisonous stink, and especially when said stream was dry and not running water, to the great injury to the health of plaintiff and his family, thereby rendering useless said lands for the purpose for which plaintiff acquired and improved the same—by reason of all of which, as aforesaid, said lands and premises have been greatly depreciated, and have been damaged in its actual value in the sum of $600. The petition further alleges damages because of loss of the usable value of said lands for the years 1910, 1911, and 1912 in the sum of $900. The defendant by demurrer, answer, and demurrer to the evidence of the plaintiff interposed the bar of the statute of limitation as a defense to plaintiff's action. At the trial the plaintiff dismissed his cause of action for permanent injury to said land by depreciation in the value thereof in the sum of $600, and the cause proceeded to trial for the recovery of damages by reason of the loss of the usable value of said lands because of the maintenance by defendant of a nuisance. Plaintiff had judgment in the sum of $600, and the defendant appeals.

The only question necessary to determine in disposing of this case is whether or not the injury occasioned the plaintiff by the maintenance of the sanitary sewer by defendant was such that plaintiff might recover all of his damages occasioned thereby in one action. If the nuisance complained of was permanent, plaintiff might recover all his damages in one action, and the true measure of his damages would be the difference between the market value of his lands before the nuisance was erected and the value after its erection. Choctaw, O. & G. Ry. Co. v. Drew, 37 Okla. 396, 130 Pac. 1149, 44 L. R. A. (N. S.) 38; City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867. If, however, the nuisance maintained by the defendant was temporary and abatable, plaintiff could not recover all of his damages occasioned by such nuisance in one action, but would be entitled to maintain successive actions for his damages as injury might arise therefrom. Under the pleadings and proof in this case, if the nuisance maintained by the defendant be permanent, plaintiffs cause of action was barred, he having instituted his suit more than six years after the nuisance was established. This is conceded by the plaintiff, he having at the trial dismissed his cause of action for permanent injury to his lands as being barred by the statute of limitation.

There is a wide divergence among the authorities upon the question of whether or not a nuisance of this character is permanent. In City of Ardmore v. Orr, supra, this court lays down the rule as follows:

"For negligent injuries to realty which result from a cause susceptible of remedy or abatement, the owner is entitled to recover therefor only such damages as had accrued on account of the impaired or lost use of his property up to the time of the commencement of his action. For injuries resulting from permanent cause, the owner may recover in a single action his entire damages, to wit, that amount which represents the permanent depreciation in the realty in value in consequence of the injury. When a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent."

In Pahlka v. Chicago, R. I. & P. Ry. Co., 62 Okla. 223, 161 Pac. 544, Mr. Commissioner Johnson, who wrote the opinion of the court, after quoting City of Ardmore v. Orr, ubi supra, says:

"It may be said that, in its exact expression this rule bears a contradiction, in that every human edifice might be altered by the expenditure of labor or money, and that therefore, under the strict letter of the rule, no artificial improvement could be permanent.

However, the spirit of the rule contemplated an extension of its effect, not expressly stated in the former decisions of this court. Giving it such an express extension, the rule would be that a negligent condition in an artificial structure, permanent in its nature, will not be held permanent, if such negligent condition is abatable by an expenditure of either labor or money and such abatement is consistent with the rightful use and maintenance of the structure."

Later in the opinion he lays down the rules applicable to determine whether the nuisance is permanent or temporary as follows:

"We must hold that when a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent, it being clear that the abatement of the causal negligent condition in a structure, rightfully maintained except for the negligence, is consistent with the rightful use and maintenance of the structure if the structure is otherwise permanent in its nature; that a cause of action for damages, occasioned by a structure, not permanent under the above rule, arises at the time of the actual injury, successive actions being maintainable for successive injuries, the respective injuries not being total or permanent; that, in cases of injury from permanent cause, the cause of action arises at the time of the actual injury, and not at the time of the creation of the cause, where such actual injury is not the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions; and that, in cases of injury from permanent cause, where the injury is the obvious or necessary result, assuming the continuance or recurrence of ordinary conditions, the cause of action arises at the time of the creation of the cause, viz. the construction of the improvement."

In St. Louis & S. F. Ry. Co. v. Stephenson, 43 Okla. 676, 144 Pac. 387, L. R. A. 1916E, 966, it is held:

"In an action for damages to land by reason of the construction of a railway embankment, where the pleadings and evidence show conclusively that the permanent character of the embankment and its continuance as originally constructed necessarily produced the injury to the freehold and caused the entire depreciation in the value thereof at the time of the construction, and that such injury had wholly occurred prior to the time when plaintiff acquired such land, held, that she took it in its then known condition, and the issuance of a patent conveying the land did not confer upon her a right of action for the recovery of damages for injuries thereto occurring prior to her acquisition of title. Held, further, that a loss of rental alone does not constitute an injury for which damages may be recovered where, as in this

case, there was permanent injury to the land itself."

In Atchison, T. & S. F. Ry. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254, it is said:

"An action against a railroad company for damages resulting from an overflow caused by the defective construction of the railroad embankments is not barred by limitation, because such embankments have been constructed more than two years prior to the injury, but the time in which such action may be brought dates from the time the injuries are received and damages sustained."

As we have said, there is a wide divergence of opinions among the courts as to the rule to be applied in determining whether or not a nuisance is permanent. One line of authorities makes the rule depend upon whether or not the nuisance is legally abatable. All the courts adopting this rule hold that any structure or thing, not on the plaintiff's property and not protected by law or public policy, that injures the property or health of another is an abatable nuisance within this rule. Most of them hold that, if the same structure or thing is protected by law or public policy, so that the law will not abate it, then it is a nonabatable nuisance, and it is not within this rule. Where a thing or structure which would be legal and nonabatable, if properly constructed, is in fact negligently constructed, and the injuries are due to negligent construction, there is a right to successive actions. But where a right of action exists for injuries by a legal structure, one that is not abatable because protected by law, public policy, or other consideration, all the damages must, unless negligence in its construction or operation is the cause of the injury, be collected in one action. By a legally nonabatable structure the courts usually mean a structure which, if erected by one that has the power of eminent domain, could be made legal by condemning the property that it injures or the right that it infringes.

Another line of authorities takes the physical character or nature of the structure into consideration in determining whether or not the nuisance is permanent. Another line of authorities takes into consideration the certainty and obviousness of future injuries; that, if the structure is reasonably permanent in its nature and the physical injuries, before they occur, are obviously certain to occur, and the damages are capable of being estimated for all time, but one right of action accrues. Still another line of authorities tests the permanent character of a nuisance by considering the character

of the injuries as to being permanent or temporary.

In an exhaustive note to the case of Irvine v. Oelwein, L. R. A. 1916E, 996, 997, the authorities holding to the varying rules, as above set forth, are collated and commented upon by the editor. The writer of the note is of the opinion that the better considered cases adopt the first rule and make the test of the permanent character of the nuisance to depend upon whether or not it may be legally abated.

In Iowa it has been repeatedly held that the court will take judicial notice of the fact that sanitary science has developed means by which sewage may be disinfected and deodorized so that it is rendered innocuous. It is therefore held that a nuisance, caused by the pollution of a water course by emptying sewage therein, is abatable and not permanent. Hollenbeck v. City of Marion, 116 Iowa, 69, 89 N. W. 210; Bennett v. City of Marion, 119 Iowa, 473, 93 N. W. 558; Vogt v. Grinnell, 123 Iowa, 332, 98 N. W. 782. The difficulty of the application of this rule to the instant case lies in the fact that the defendant is not charged with negligence in the construction and maintenance of this sewer. So far as the record discloses there has been no want of care on the part of the defendant to avoid injury to the plaintiff.

In Hollenbeck v. City of Marion, supra, the question arose upon the measure of damages. The court says:

"But we do not decide this point, for, conceding that this was and is a permanent nuisance, and that plaintiff might have recovered damages past, present, and prospective, by showing the difference in the value of the land before and after the sewer system was established, still it does not follow that defendant may complain of the rule adopted by the trial court. * * * Defendant offered to show that the system was intended to be, and was, permanent in character; but the witness called for that purpose was not permitted to answer a direct question which sought to elicit the information. However, the witness was permitted to fully explain the manner and method of construction, how and under what authority the sewer system was established, and various other matters indicating permanency. Even if the ruling on the direct question was erroneous, the error was without prejudice. Had defendant asked that the entire damage be assessed on the theory of the permanency of the nuisance, doubtless it would have had that right. But this, as we have seen, it did not do. True, in its answer it refers to the fact that the system was permanent; but it did not ask that the damages be assessed on this theory. On the contrary, it

denied all damage, and pleaded a right to discharge the sewage into the stream. There is no doubt that plaintiff could have elected as we have said, to treat the nuisance as a continuing one and not as permanent, so far as this case is concerned. Whether or not recovery herein will bar another action is a matter which does not require decision at this time."

In Bennett v. City of Marion, supra, the court based its conclusion upon the fact that two or more courts had held the nuisance to be temporary, that a decree of abatement had been entered which had not been appealed from, and that the plaintiff had recovered upon the theory that the injury was temporary and that such judgment had not been appealed from.

In Vogt v. City of Grinnell, supra, the court says:

"The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream, instead of destroying it by filtration through beds of sand and the use of a septic tank, thereby rendering the sewage innocuous. Indeed, this is precisely what the city did when threatened with a suit. A temporary excavation for filtration was made immediately, and an appropriate tank, adequate for the disposal of all the sewage, to be completed by the 1st of December following, contracted for, thereby demonstrating that the nuisance was not permanent. A nuisance cannot be permanent which can be abated without unreasonable expense by the party creating it."

It would seem therefore that the expression that the court would take judicial notice that the sewer might be rendered innocuous by the proper sanitary appliances was a dictum arising out of the peculiar facts existing in those cases, and we do not think that we could apply the doctrine there announced in determining the question presented by the record in the instant case. If in the instant case it had been made to appear that there was want of care in the construction and operation of the sewer system, or that by the exercise of ordinary care injury could have been avoided, the rule laid down in City of Ardmore v. Orr, supra, would apply, and the plaintiff could maintain successive actions for injuries recurring within the period of limitation. We cannot presume negligence. As the injury arose from a permanent cause, and necessarily results from the continuance of ordinary conditions, if the plaintiff may maintain successive actions, a new cause of action would arise each day. The plaintiff and defendant could therefore be involved in continuous litigation to protect their respective rights without any negligence on the part of the defendant being made to appear.

In Virginia Hot Springs Co. v. McCrary, 106 Va. 461, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179, the Supreme Court of Appeals of Virginia held:

"The injury from the permanent sewer system of a hotel which is emptied into a stream so as to destroy it completely for the use of lower riparian owners is permanent, and not continuing, so that the damage must be recovered in one action, against which the statute of limitations begins to run when the injury is done."

In Middelkamp v. Bessemer Irrigation Ditch Co., 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795, it is held by the Supreme Court of Colorado:

"The statute of limitation begins to run against a cause of action for injuries to neighboring land by seepage from an irrigation ditch constructed under statutory authority, in the usual and ordinary manner, from the date the lands are first visibly affected and injured by seepage which, together with its continuance from the same source, caused the injury for which the action was brought, and it is immaterial that the injury increased with the passage of time."

In McLaughlin v. Hope, 107 Ark. 442, 155 S. W. 910, 47 L. R. A. (N. S.) 137, the Supreme Court of Arkansas holds:

"The damages to be awarded for the turning of sewerage into a stream by the permanent plant of a municipal corporation should be assessed on the theory of a permanent taking under the right of eminent domain."

In Gulf, C. & S. F. Ry. Co. v. Mosely, 161 Fed. 72, 88 C. C. A. 236, 20 L. R. A. (N. S.) 885, the United States Circuit Court of Appeals said:

"The limitation period for injury to land on the opposite shore by deflection of the current of a river by the construction of a permanent dike to protect one shore begins to run from the completion of the structure, although the injury occurs by the washing away of the shore during periods of high water in successive years thereafter, a process as certain to continue as the annual rains and the flow of the water of a large river."

See Highland Avenue & Belt Railroad v. Matthews, 99 Ala. 24, 10 South. 267, 14 L. R. A. 462.

In Keene v. Huntington, 79 W. Va. 713, 92 S. E. 119, L. R. A. 1917F, 475, the Supreme Court of Appeals of West Virginia held:

"A municipal corporation is liable in damages for injury to real estate, where the occupancy thereof is rendered less desirable because of noisome odors emitted from an incinerator plant erected and operated by such municipal corporation near to such real estate, and because of the deposit thereon of ashes and other offensive substance by such incinerator plant, if such plant is one of the instrumentalities constructed by said city for the purpose of carrying out its legitimate powers, and is fit to be used for the purpose as a permanent structure, and such damages to such nearby real estate result from the construction and proper operation of such plant, then the injury is a permanent one and entire damages must be recovered therefor in a single suit, and the measure of such damages is the diminution in the value of such real estate by reason of the construction and proper operation of such plant. If the injury to such adjoining property arises solely from the negligent or improper operation of such plant, then such injury is of a temporary character, and damages for such injury must be recovered in successive actions."

Our statutes provide that the cities and towns of Oklahoma shall have the power to condemn private property for public use in the construction and repair of public, district, and private sewers in the same manner as other property is condemned by cities for public use. Rev. Laws 1910, § 467.

In this case it was alleged and proved by the plaintiff that, from the construction of this sewer in 1907, the defendant has continuously polluted the waters of the creek running through plaintiff's premises so as to constitute a nuisance. It seems therefore that this case falls within the rule announced in Pahlka v. Chicago, R. I. & P. Ry. Co., supra, that:

"In cases of injury from permanent cause, where the injury is obvious or necessarily results from the continuance or recurrence of ordinary conditions, the cause of action arises at the time of the creation of the cause, viz. the construction of the improvement."

The record in the instant case shows that the sewer system of the defendant was constructed and maintained as a permanent institution, and that the injury to the plaintiff resulting from the maintainance of this sewer system was permanent.

As we have seen, the defendant was authorized to exercise the power of eminent domain, and could in a proper proceeding have condemned the right to use the water course for the discharge of the sewage, and have compensated the plaintiff for the damage thereby occasioned. Not having done so, the plaintiff might in a proper action recover such damages.

It does not appear that the injury was occasioned by any negligent construction of the sewer which might be remedied, as in the case of City of Ardmore v. Orr, supra. It therefore became and was a permanent nuisance under the reasoning of any of the varying lines of authorities above referred to, and particularly under the rule in the Pahlka Case, and the measure of plaintiff's damages was the depreciation of the value of his property because of such nuisance. The damages could all be recovered in one action, and plaintiff's cause of action arose when the defendant constructed and began to operate such sewer. We therefore conclude that the plaintiff's cause of action was barred by the statute of limitation.

The judgment of the trial court should be reversed.

Commissioner STEWART, being disqualified, did not participate in the consideration of this case.

By the Court: It is so ordered.