## OKLAHOMA CITY v. WEST.

No. 21070.   Opinion Filed Nov. 10, 1931.

Rehearing Denied Feb. 9, 1932.

M. W. McKenzie, Municipal Counselor, and A. L. Hull, Asst. Municipal Counselor, for plaintiff in error.

Rittenhouse, Lee, Webster & Rittenhouse, for defendant in error.

SWINDALL, J. The nuisance complained of was the turning of unpurified sewage into the river at Oklahoma City to the damage of the plaintiff as a riparian owner, and the petition contained the usual allegation that the nuisance could be abated by the expenditure of money, and it was alleged that the damage would continue until abatement. The petition contained an admission that a prior action had been settled by a stipulation which allowed a certain sum as damages sustained from the nuisance up to April 15, 1928, judgment for that sum having been rendered pursuant to the stipulation. It was also alleged that the settlement had been made on the promise of the city to abate the nuisance, by purification of the sewage and alleged that a purification plant erected by the city failed to purify the sewage and that the nuisance still continued to the plaintiff's damage. The answer was a general denial and a plea of the statute of limitations.

The plea of the statute of limitations was based upon the theory that the nuisance was permanent, and the contention that the nuisance was permanent was grounded on an alleged failure to charge any negligence in the adoption or execution of the plan for the construction of the sewers or the disposal plant that had been built. In addition it was urged at the trial that, since the nuisance was permanent, the former recovery, although the action was on the theory of a temporary nuisance, was a bar to recovery in the present action. Unless the nuisance should be held to be permanent, neither contention, that of the statute of limitations, nor of the bar of the former action, is sound.

It appeared from the evidence that the disposal plant required some alterations, and that it was also lacking in capacity, although with some alterations it would function properly to its capacity, and that the changes and an increase in capacity would effect an abatement of the nuisance.

(1, 2) The defendant relies primarily upon the case of Mangum v. Sun Set Field, 73 Okla. 11, 174 P. 501, in which the first syllabus paragraph reads as follows:

"The injury caused to a riparian owner by the operation of a sanitary sewer system of a municipal corporation, emptying its sewage into a watercourse, thus polluting such watercourse so as to constitute a nuisance, there being no negligence charged against such municipal corporation in the construction and operation of said sewer system, is a 'permanent injury.' The damages occasioned by such injury may all be recovered in one action, and successive actions therefor may not be maintained."

The decision is opposed to a long line of decisions in this state, and since its rendition has often been ignored, but it has not been expressly overruled, so we take this occasion to expressly overrule it so that it may cause no more trouble to the profession or to the public.

A nuisance of this character, by discharging pollution into a stream, is not caused by a so-called permanent structure, but is caused by the manner in which the structure is used. We have repeatedly held such a nuisance to be temporary under the rule that where a nuisance can be abated by the expenditure of money or labor, it shall be considered temporary. These decisions, so far as pollution is concerned, may be based upon a hitherto unannounced application of the doctrine of judicial notice, and that the real rationale of the decisions may in the future be fully apparent, we announce that this court takes judicial notice of the fact that modern science has advanced to the point where sewage is capable of purification, and that it is not only capable of purification, but can be easily and successfully purified by the use of modern appliances. Bennett v. City of Marion (Iowa) 93 N. W. 558 (1903). "Indeed the purification is coming to be recognized as a necessity." Platt Bros. & Co. v. City of Waterbury, 72 Conn. 531, 67 Atl. 508 (1900). We hold it to be necessary.

Cases holding a nuisance to be only temporary nuisance when it may be abated by the expenditure of money or labor are: City of Ardmore v. Orr, 35 Okla. 305, 129 P. 867; City of Cushing v. High, 73 Okla. 151, 175 P. 229; A., T. & S. F. Ry. Co. v. Eldridge, 41 Okla. 463, 139 P. 254; St. L. & S. F. R. Co. v. Ramsey, 37 Okla. 448, 132 P. 478.

The rule announced in Mangum v. Sun Set Field, supra, which has the support of decisions in some jurisdictions, is unsound in that it fails to consider the real cause of the nuisance. In many of those cases the courts used the expression "permanent structure," when the cause of the damage was not in the structure in and of itself, but merely in the manner of its use.

We do not hold that all sorts of pollution are capable of abatement, as it may well be that in many cases the possibility of abatement of a particular cause of injury would be a question of fact for the decision of a

jury, as in Sinclair Oil & Gas Co. v. Allen, 143 Okla. 291, 288 P. 981. But so far as pollution from sewage is concerned, as said above, we take judicial notice of the fact that it can be purified, that it is being purified, and that purification is now the almost universal rule in the construction and maintenance of sewer systems.

Nor do we hold that even in the case of temporary nuisance there may not be an item of permanent damage. That there may be permanent damage follows from the fact that even a temporary cause may, while effective, cause some complete destruction. City of Oklahoma City v. Stewart, 76 Okla. 211, 184 P. 779; Comar Oil Co. v. Hackney, 119 Okla. 285, 250 P. 93.

(3) However, the defendant also cites two Missouri cases, Thurston v. St. Joseph, 51 Mo. 510, and Donahoe v. Kansas City, 136 Mo. 657, 38 S. W. 571. The latter case was merely an action by a workman upon a system for injuries alleged to have been sustained by the negligence of the city, and it is not in point, but it cites the former case as to the distinction between judicial and quasi judicial duties and ministerial duties. The former case, Thurston v. St. Joseph, supra, was a suit by a lot owner for damages caused by sewage backing up and flooding his lot. The plaintiff alleged negligence, and the court mentioned that fact in the opinion, but liability was not expressly based upon negligence. Recovery was allowed under a constitutional provision providing that private property should not be taken for public use without just compensation. However, in a separate concurring opinion, Wagner, J., while objecting to the overruling of a former Missouri case (St. Louis v. Gurno, 12 Mo. 414) denying liability for establishment of the grade of a street, said that the general rule as to sewers was that where the construction requires the exercise of judgment as to the time when, and the mode in which they shall be undertaken, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, then their construction is in the nature of judicial or quasi judicial proceedings, and the corporation is not responsible for a defect or want of efficiency in the plan adopted; but when the duty becomes ministerial, then the corporation will be liable for the negligent discharge or the negligent omission to discharge such duty, resulting in an injury to others. The statement is blind in that it does not indicate the reason for and the limitation upon the exemption from liability, or rather in not indicating what conditions create a duty, or where the dividing line is as to what constitutes a breach of duty. The rule is much better expressed by Beven on Negligence in Law (3d Ed.) pp. 316, 317, in the following language:

"These decisions point to twofold functions on the part of public bodies. They have, first, to exercise their discretionary administrative powers as to the advisability of undertaking proposed works, and as to the general manner in which the work they determine to undertake is to be performed. Thus corporations are unfettered by legal constraint, so far as a private action against them is concerned, in deciding whether they will have a system of drainage and sewerage, and as to the proportions of the system and the sum to be appropriated to its cost. Having decided this a new liability arises. If injurious consequences to an individual flow from the carrying out of the plan actually determined on, an action is maintainable for the loss caused; for instance, if the effect of the plan of drainage is to collect water and to cast it on the land of any one, where of its own accord it would not have flowell, the corporations so acting are liable; because they have no more right to deprive a private citizen of the enjoyment of his property than any other private citizen has.

"If it is sought to escape responsibility by showing that the work is efficiently done in accordance with a predetermined plan, and that the injury is caused by the defect of the plan itself, and it is contended that for mere defect of plan there is no liability on the corporation, since the determination in regard to that is discretionary or judicial, the answer is that so long as the plan is merely passively ineffectual, so long as it does not afford to all the whole benefit they may have reasonably looked to derive from an efficient plan, the contention that no action lies in respect of the defect is a sound one; but where the plan in its execution involves an actual invasion of another's property, there is no protection; or to state the matter somewhat differently, against the mere incompleteness or inadequacy of the plan as a solution of a given problem, there is no redress; but such incompleteness or inadequacy is of no avail as a defense to an action for trespass or interference with the property or rights of others. The principle is neatly stated by Lush, J., in Hall v. The Mayor, etc., of Butley. 'If damage ensues as the consequence of work properly done, it must be sought for by a claim for compensation; but if, as the result of negligence in the doing of it, it is properly the subject of an action.' "

So, it may be conceded that whether a city having a permissive right shall construct sewers, is a matter solely for the determination of the city, and a failure to construct them is no breach of duty. It

seems to the writer that since the determination is a matter of policy, the determination is rather legislative than judicial or quasi judicial, but by whatever term the power be designated, the inaction is not actionable, as it is not a breach of any duty. The same result would follow with respect to a decision to drain part of a city in preference to draining some other part. Also, since at common law the city is under no duty to drain off surface water, if the drains or sewers are constructed and they merely fail to drain off surface water from lots, there is merely a nonfeasance as to a matter to which there was no duty, and for lack of a breach of duty there would be no action. However, if by failure of the drains or sewers to properly function water is collected in a body and thrown upon a person's premises, the city is liable, and even at common law, in the absence of a constitutional provision that private property should not be taken for public use without just compensation, there would be no absolute exemption under a claim that the city had only exercised a legislative function, or, as it is often called, a judicial or quasi judicial function.

It is manifest that there is no necessity for a constitutional provision requiring the payment of damages for taking or damaging private property unless the taking or damaging is authorized. And at common law a legislative act was not considered as authorizing the commission of a nuisance in the absence of necessity unless there were provisions in the act which granted such authority. An instance where the authority was granted was where authority was given to construct and operate a railroad. While vibration was a necessary consequence of running trains, the vibration was not wrongful because it was authorized by the act. The only damages which the act authorized to be assessed were damages caused by the construction of the road, and this was held to exclude the allowance of damages for vibration, as such damages were not caused by the construction of the road but by the operation of the road, and since the act had provided what damages should be allowed, that excluded authority to assess other damages. It was such cases that occasioned the constitutional provisions found in this country which provide that private property shall not be taken, or shall not be taken or damaged, for public use, without just compensation.

But in the present case what is being done is something that was not authorized, and a right to damages does not require the sanction of a constitutional provision. The

damages are recoverable for what was, and what still is, a common-law tort, a nuisance. We point this out because if it should be conceded that the right to damages should be based upon the constitutional sanction, it would involve the admission that the nuisance was authorized, and if what was a nuisance should be held to be authorized, of course it would be held to be permanent. It will be found, however, that the real ground of liability in the case is that the nuisance was unauthorized, and the reason why it was unauthorized is a sufficient reason why it should not be considered permanent, a lack of necessity for its commission.

The authority for the commission of the nuisance, irrespective of the adoption of a plan by the municipality, must be grounded in a permission to commit the nuisance found in the act or in an inability to do the act without committing the nuisance. Truman v. London, Brighton & South Coast Railway Co. (1884) L. R. 25 Ch. Div. 423; (1895) 29 Ch. Div. 89; Metropolitan Asylum District v. Hill (1880-1881) L. R. 6 App. Cas. 193.

"Where the nuisance is not shown to be the absolutely necessary consequence of what is authorized by statute, the courts have been slow to admit of any argument by which it has been contended that the creation of a nuisance must be taken to have been implied. This appears from what was said in the Court of Appeal in the Queen v. Bradford Navigation Co., and by the judgment of the Court of Appeal in the Attorney General v. Colney Hatch Lunatic Asylum; and in Clowes v. Staffordshire Potteries Waterworks Co., where Mellish, L. J., dwells much upon the absence of any compensation clause, as indicating that the Legislature could never have intended to justify an injury to a private right. I agree also with what was said by Fry, J., in the Attorney General v. Gas Light & Coke Co., that the full burden of proof in such a case rests entirely upon those who say that they cannot, without creating a nuisance, do a thing which they are bound to do. Whether the proposition be so framed as to assert that the Legislature never intended the act complained of to be done, or to say that those to whom the Legislature has intrusted the carrying out of a public object could do so without doing that particular act, the result is the same." Pollock, B., in Hill v. Managers of Metropolitan Asylum District, 4 Q. B. Div. 433, 444.

And in the same case on appeal to the House of Lords, in Met. Asylum Dist. v. Hill, supra, we find the following language:

"On the other hand, I do not think that

the Legislature can be held to have sanctioned that which is a nuisance at common law, except in the case where it has authorized a certain use of a specific building in a specified position, which cannot be so used without occasioning nuisance, or in the case where the particular plan or locality not being prescribed, it has imperatively directed that a building shall be provided within a certain area and so used, it being an obvious or established fact that nuisance must be the result. In the latter case the onus of proving that the creation of a nuisance will be the inevitable result of carrying out the directions of the Legislature, lies upon the persons seeking to justify the nuisance. Their justification depends upon their making good these two propositions—in the first place, that such are the imperative orders of the Legislature; and in the second place, that they cannot possibly obey those orders without infringing private rights. If the order of the Legislature can be implemented without nuisance, they cannot, in my opinion, plead the protection of the statute; and, on the other hand, it is insufficient for their protection that what is contemplated by the statute cannot be done without nuisance, unless they are also able to show that the Legislature directed it to be done. Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the Legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose." By Lord Watson at page 212.

See, also, Baltimore & Potomac Railroad v. Fifth Baptist Church, 108 U. S. 317, 27 L. Ed. 739.

Where a constitutional sanction requires payment of damages for the taking or damaging of private property for public use, there is a danger of attributing the right to damages to the constitutional provision and tacitly implying authority to commit the wrong upon payment of damages rather than to closely examine as to the right. For that reason we have quoted from the above cases decided in a jurisdiction where there is no such constitutional guaranty, which necessarily are concerned with the necessity of a consideration of the scope and effect of the requirement or conferred authority. But such is also the American doctrine, and it is well expressed in similar language as follows:

"It is suggested that this dam was erected by authority of law, and that whatever is authorized by the Legislature or its authority cannot be abated as a nuisance. This question is not raised by the demurrer, but, if the fact be as claimed by the defendants, it might be a reason why the dam itself could not be abated, but none why the defendants should not be enjoined from so operating it as to create a public nuisance. If the Legislature expressly authorizes an act which must inevitably result in public injury, what would otherwise be a nuisance may be said to be legalized; but if they authorize an erection which does not necessarily produce such a result, but such result flows from the manner of construction or operation, the legislative license is no defense. In order to justify a nuisance by legislative authority, it must be the natural and probable result of the act authorized, so that it may fairly be said to be covered by the legislation conferring the power. Wood, Nuis. 853-861." Village of Pine City v. Munch (Minn.) 6 L. R. A. 763.

It is true that the cases use the word "negligence," but that word is commonly used to indicate merely a breach of duty, without regard to whether the duty is measured merely by a requirement to exercise ordinary care or is a duty which is breached regardless of the exercise of all possible care, so it is necessary to go beyond the mere word "negligence," and ascertain in the particular case whether the required diligence has been shown or whether it is possible to exonerate from liability by any possible diligence. A case involving all of the elements, legislative authority, plan, and negligence, well illustrating the bearing of all of them as to a nuisance, is State v. City of Portland, 74 Me. 268, 43 Am. Rep. 586, in which the court expressed itself as follows:

"The city solicitor properly concedes that 'corporations generally are regarded as indictable for malfeasance as well as nonfeasance respecting duties of a public nature, plainly enjoined by the Legislature, for the benefit of the public;' but he urges that the city ought not to be held to answer for a permissive nuisance arising from sewage matter deposited in tide-water, where there is no allegation of negligence or defect in the plan of the sewer (and all the difficulty there is, arises from the plan), in adopting which the city has exercised its best judgment as to the proper location of the outfalls of the sewers, and has been guilty of no negligence, having constructed their sewers upon a system as good as any one knew how to build at the time of their construction.

"While this plea, if supported by the proof, would suffice to relieve the city officials in the popular judgment from the blame of negligence, we do not think it amounts to a legal defense for the city upon a charge of

creating and maintaining a public nuisance in the manner set forth in the indictment.

"While evil intent, or negligence importing a greater or less degree of moral blame, may and ordinarily does accompany the commission of a nuisance, it cannot be said that either is an essential element of the offense. On the contrary it is certain that there are cases where harm—'something that worketh hurt, inconvenience or damage,'—may occur either to the public or to individuals, when the actor is proceeding with good motives, and what would commonly be regarded as ordinary care. In other words, there may be cases where the party in the exercise of his legal rights is bound to afford absolute security to all not themselves in fault, from any evil consequences arising from his acts. Something more than the ordinary care, the want of which constitutes negligence in the ordinary acceptation of the term, is required. * * *

"Or to use a different mode of expressing the same legal result and applying it to the facts of this case, the very act of accumulating and permitting to remain large masses of filth borne down by the sewers, in a place where they are prejudicial to public health, is per se proof conclusive of negligence, sufficient to sustain the charge of nuisance. * * * In short, the city must at its peril make the outfall of its sewers where the deposits from them will be promptly removed by the reflux of the tides, so that they will not create a nuisance, either to public health or the right of navigation, or they must provide for their speedy removal in some other mode."

The city in this case does not contend that it is not liable for the nuisance, but that in considering its claim it should be held that the nuisance is permanent. As said above, if the nuisance had been legalized, then, although there would be liability to pay damages in an action brought within the period of the statute of limitations, the nuisance would be held to be permanent. But the right to damages in this case is not the right to damages for what has been legalized, but the right to recover damages for a common-law tort, a nuisance, and a nuisance not authorized for the plain reason that it is in no sense necessary. The same reason that bases the right of recovery on the common-law tort, lack of necessity, amply rebuts a contention that it should be considered permanent. It is no more necessary to continue the nuisance than it was to commit it. It is easily abatable, and until the city sees fit to abate it, it can reconcile itself to the necessity of the payment of damages as they may from time to time accrue.

(4) The defendant's brief also cites Page v. Oklahoma City, 129 Okla. 28, 263 P. 448, to support its contention that the nuisance should be considered permanent. In that case suit was brought for the recovery of permanent damages, and the city contended that the nuisance was temporary and that permanent damages could not be recovered, and that for that reason no recovery could be permitted. The court, however, held that the plaintiff was entitled to recover whatever damages she could prove. In the opinion, however, the court indicated that the nuisance itself should be considered permanent, and it based that statement on Highway Ave. v. Mathews (Ala.) 14 L. R. A. 462, which was a suit for damages caused by a railroad embankment built in the street. That apparently was a case where the nuisance was caused by the very existence of the permanent structure, so that the cause was permanent. We agree that even though the nuisance be temporary, any element of permanent damage that may have been sustained is recoverable under proper allegations, but the language of the opinion that indicates that the nuisance caused by turning unpurified sewage into a stream to the damage of a riparian owner is a permanent nuisance is disapproved.

(5) The above disposes of all of the contentions of the defendant except a contention that there was error in the refusal to give the following requested instruction:

"Instruction No. 2. Evidence has been introduced by the plaintiff in this case tending to show that plaintiff or some members of plaintiff's family have been sick, and you are instructed not to consider such evidence in arriving at a verdict in the case, for the reason that it has not been shown or established sufficiently by the evidence that such sickness, if any, was the result of defendant's act, and it has not been shown that the operation of the sewer system by defendant was the direct and proximate cause of plaintiff's sickness or sickness of plaintiff's family."

The defendant contends that the refusal was error because the instruction was erroneously refused in Sayre v. Rice, 132 Okla. 95, 269 P. 360, and that therefore that decision establishes that the refusal to give the instruction in this case was error. This case is distinguishable from the Sayre Case in two material particulars. In the first place, in that case there was evidence of sickness of the plaintiff's family, and without the establishment of causal connection the court in the instructions permitted recovery for sickness as an element of damage. In the present case the only evidence of sickness was given by a witness who testified that he and his wife were sick, and

on objection by the defendant the evidence was stricken out during the trial with an instruction that there could be many causes for sickness and to consider such evidence it was necessary to establish causal connection and that since the connection had not been established, they should disregard the evidence.

(6) It is true that in answer to a question as to discomfort, the plaintiff testified that the foul stench woke him up at night and caused a headache. No objection was taken to the question, and there was no motion to strike the answer, nor was there any effort made to break down the answer by cross-examination. It may readily be conceded that in the ordinary case the cause of sickness is a matter which depends upon expert testimony, but we are not inclined to go to the length of holding that a party may not testify to an immediate sensation resulting from what within common knowledge is an effective cause capable of producing the claimed sensation. There was no error in refusing the requested instruction as to sickness, because the instruction had been given during the trial, and there was no contention made that the plaintiff or his family was sick in the ordinary sense. The evidence as to discomfort was admissible, and the instructions properly permitted recovery for discomfort.

The judgment of the trial court is affirmed.

CLARK, V. C. J., and RILEY, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., and HEFNER, J., absent.

---

Supplemental Opinion on Rehearing.

SWINDALL, J. In the opinion in this case it was carefully pointed out that we were considering only a nuisance caused by the discharge of unpurified sewage into a watercourse, and we took judicial notice of the fact that sewage can be easily and successfully purified by modern methods. Having so concluded, we held it to naturally follow that the nuisance was to be held temporary, for it could be abated by the expenditure of money or labor.

We refused to follow the contention that we should look backwards to ascertain why it was that the sewage was not sufficiently purified to prevent the nuisance, and held that the nuisance was a wrong and that it was wholly unnecessary to allege negligence as a condition of recovery for the nuisance, or to avoid holding the nuisance to be permanent.

In the petition for rehearing the defendant endeavors to convince us that the statutes of this state have authorized the discharge of unpurified sewage into watercourses, and to add to the weight of the argument they have copied short extracts in the brief upon the petition for rehearing from cases in which such a nuisance was said to be a taking of property. In the opinion in the case we mentioned the fact that such expressions were used in some of the cases, but we said that such expressions were beside the point, because an authority to construct sewers did not, nor did authority to turn sewage into a watercourse, authorize the commission of a nuisance. It is common in these cases to not only contend that there is authority to commit the nuisance, but also that certain results are consequential and that there can be no recovery at all for such effects. It is usual to refute that contention by referring to the result as a taking to show that even if the result was authorized, yet there would be liability, and the court then goes on and specifically holds that the result was not within the authority, thereby leaving the result a nuisance, a common-law tort, something beyond any authority conferred.

We would naturally expect the defendant to select from the cases using such expressions those cases, if any, that would refute our conclusion. Let us examine the cases cited upon that point in the brief upon the petition for rehearing.

One case referring to the conduct as a taking was Kewanee v. Otley (Ill.) 68 N. E. 388. There the court held the nuisance to be a wrong and enjoined its continuance, and it specifically classed the nuisance as continuing or temporary.

In Chicago G. W. Ry. Co. v. First Methodist Church, 102 Fed. 85, another case cited by the defendant, the court said:

"* * * There is no difference in principle between an actual physical invasion of one's property and the creation and maintenance of a nuisance which has the effect to deprive him of his beneficial use."

The court also said:

"If it does not desire to make compensation for the nuisance thus created, it must remove it."

And it cited with approval Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, in which the Supreme Court of the United States said that if the defendant could not abate the nuisance by alterations, it could and should move. And we find that in a later action between the railroad and the Fifth Baptist Church, 137 U. S. 568, 34 L.

Ed. 784, the court held the nuisance upon the second action to be a continuing or temporary nuisance. In both Supreme Court decisions it was held that injunctive relief would be proper. And in Chicago G. W. Ry. Co. v. First Methodist Church, the court specifically held that what was being done that caused the nuisance was something beyond the authority conferred by the legislation which the defendant claimed was its justification.

In Mansfield v. Balliett, 65 Ohio St. 451, 63 N. E. 86, a case of pollution by sewage, cited in the brief on the petition for rehearing, the court cited with approval from authorities holding the nuisance to be a wrong, and it affirmed a judgment for the plaintiff rendered over a plea of former recovery in a prior action.

In Sammons v. Gloversville, 70 N. Y. Supp. 284, another sewage pollution case cited by the defendant, the court granted an injunction until such time as the defendant might obtain legislation permitting the nuisance or should abate it. The court did not say just what legislation would be necessary to permit the commission of the nuisance, and on that point it is clear that mere authority to construct sewers, or authority to turn sewage into a watercourse, does not authorize the commission of the nuisance. What does appear from the case that is interesting is that although the nuisance was referred to as a taking of property, its continuance was enjoined as a wrong.

The defendant also cited another case, Winn v. Rutland, 52 Vt. 481. That was an action for alleged negligence. The court stated that the authority was required to be so exercised as not to damage others.

The only other case cited was McLaughlin v. City of Hope (Ark.) 155 S. W. 910, which seems to be in point, and which was one of the cases cited in the opinion in Mangum v. Sun Set Field, 73 Okla. 11, 174 P. 501, but if it was intended to go beyond what the Arkansas court in later cases understood its scope to be, then the later cases repudiate it, for the later cases enjoined the nuisance. In McLaughlin v. City of Hope, supra, the court said that since the conduct of the city in taking possession of the property and polluting the watercourse manifested an intention to do so permanently, damages should be assessed upon the theory of a permanent nuisance.

In Jones v. Sewer Improvement Dist. No. 3 of City of Rogers (Ark.) 177 S. W. 888, the court said:

"The measure of damages to a riparian owner from the use of a stream as an outlet for sewage is the difference in value of the land before and after the stream was so used. This rule was laid down in McLaughlin v. City of Hope, supra, and City of El Dorado v. Scruggs, supra.

"In the circuit court the plaintiffs were allowed to recover damages according to this rule, that is to say, they were entitled to and allowed to recover damages for the land taken and damaged by the construction of the sewer. The damages allowed in such cases are those which result from a proper construction of a sewer. According to the allegations of the complaint, after the sewer was constructed, it was maintained in such a way as to constitute a nuisance. The right to construct sewers and drains implies no right to create a nuisance, public or private. It is the duty of the commissioners of the sewer district to construct the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city, after the sewer has been turned over to it, to avoid the same result by properly maintaining and repairing the sewer after it is constructed. * * *

"The right conferred upon the sewer commissioners to construct the sewer system and to obtain an outlet therefor outside the city limits carried with it the power to condemn lands necessary for the outlet and for the construction of the septic tank and filter beds."

The court directed that the city be again made a party to the action and that an injunction be issued against it and the sewer commissioners. The court repudiated a plea of the statute of limitations, holding that the nuisance was temporary.

And in Sewerage District v. Black (Ark.) 217 S. W. 813, the court said:

"The appellees, in the opinion of the majority of this court, by a preponderance of the evidence have proved that a nuisance was created. It was not incumbent upon appellees to make this proof by showing the manner in which the sewerage system was constructed, or the methods by which it was maintained. Appellees have met the burden of proof when they show by a preponderance of the evidence the existence of a nuisance, and that the proximate cause of such nuisance was the sewerage system which appellants had constructed and were maintaining.

"The appellants undertook to overcome this testimony on behalf of the appellees by testimony to the effect that the sewerage system had been constructed and was being maintained according to the most up-to-date and approved methods, **and that as thus constructed and maintained a nuisance would not be created.** It was within the province of the appellants to produce such

testimony. Therefore **the issue as to whether a nuisance was in fact created and continued to exist** at the time of the institution of this action was one depending upon the credibility of the witnesses and the weight to be given their testimony. It did not devolve upon appellees to point out to appellants the defects in construction or maintenance that caused the nuisance. Having proved the existence of the nuisance and that the appellants caused the same, the matter of correction and abatement thereof must rest on the appellants."

An injunction was granted.

That is a most interesting line of authorities, considered as offered to sustain a contention that the creation of a nuisance by pollution of a watercourse is authorized and is, therefore, to be considered a permanent course of conduct. All of them hold the nuisance to be wrong; wherever an injunction was sought it was granted; and wherever there was interposed a plea of former recovery or a plea of the statute of limitations, it was denied expressly upon the theory that the nuisance was temporary.

The only exception was the case of McLaughlin v. City of Hope, supra, and whatever may have been in the mind of the court in that case, the later decisions limit the permanency to a taking for outlet, right of way or filter beds, deny the right to cause a nuisance, hold the nuisance to be temporary, and deny the necessity of alleging or proving more than the existence of a nuisance, leaving investigation as to the cause and consideration of the manner of abatement to the defendant.

Winchell v. City of Waukesha (Wis.) 85 N. W. 669, should interest counsel for the defendants. It cites a long list of American authorities denying the right to create such a nuisance. In the opinion the court said:

"This view of the legislative purpose is enforced by the consideration that, although liquid sewage must flow off along the general drainage courses of the vicinity, it is by no means physically necessary that it should carry with the solids in an offensive or unhygienic condition. Hackstack v. Improvement Co., 66 Wis. 439, 29 N. W. 240. It is matter of common knowledge, and of proof in this case, that there are practicable methods for the decomposition and practical destruction of such solids before delivering them into open watercourses; the most modern method, as explained in the evidence here, being treatment in septic bacteria tanks, whereby the decomposition and resolution into inoffensive and innocuous fluids, gases, and mineral solids is greatly expedited. * * *

"The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance is created, the same remedies may be invoked as if the perpetrator were an individual." (See cases cited.)

In that case an injunction was granted, its effective date being postponed to give the city an opportunity to abate the nuisance.

As a matter of fact, in an act passed as early as 1847, which expressly granted the right to discharge sewage into a watercourse, the Legislature itself expressly provided that it should not be so done as to create a nuisance. Attorney-General v. City of Leeds, L. R. 5 Ch. App. 583. The first sewage pollution case in Oklahoma cited and discussed this case. Markwardt v. City of Guthrie, 18 Okla. 32, 90 P. 26, at page 47.

The defendant also cites section 4404 C. O. S. 1921, enacted in 1903. That section merely authorizes the condemnation of property for the construction and repair of sewers. It certainly does not authorize the pollution of a watercourse in a manner constituting a nuisance at common law.

The defendant also cites section 8976 C. O. S. 1921, enacted in 1917, chapter 166, Session Laws of 1917, p. 266, which provides that a sewer system not then in operation shall not discharge any "sewerage" into the waters of the state without a permit, and provides that the act shall permit such discharge from sewer systems in operation prior to July 1, 1916, and defines "sewerage" as a substance containing any discharge from human bodies or animals. The act has no application. The defendant omits the provisions that follow the alleged permission. The next sentence describes the permission as **"this exception,"** indicating that the literal permission is only an exception to requiring a permit. It also provides, even as to such systems, that when it appears that a nuisance dangerous to public health is found by the State Board of Health to exist, the board shall have authority to "make an order requiring such pollution to cease within a reasonable time, or requiring such manner of treatment or of disposition of the sewage or other polluting material as may in its judgment be necessary to prevent the further pollution of such stream, or both."

The act even provides as to system not then in operation that the permit shall be for

not less than one year and not more than two years, and since a permit is required if the substance contains any discharge whatsoever from human bodies or animals, there is a clear recognition of the fact that the sewage can be absolutely purified by the total destruction of the solids and other polluting elements.

The act was one relating to the public health, and it was not intended to regulate private rights. We construe the alleged permission as merely an exception from the requirement for a permit, and a qualified exception expressly provided against a nuisance. The act has no application. It contains no permission to create a nuisance. There was no intent to legislate as to private rights. If we did construe it as intended to affect private rights, and we could see that it intended to permit the creation of a nuisance, it is manifest that the act would be unconstitutional so far as the alleged permission is concerned, for the act is entitled only as an act to preserve the purity of the waters of the state, and such a title would not permit the enactment of a permission to pollute the waters in violation of private rights.

The defendant urges this act as a legislative declaration of the intent and meaning of section 4404 C. O. S. 1921, supra, enacted in 1903. Since section 8976 contains no permission in effect but contains merely an exception to the requiring of a permit, and in no way authorizes the commission of what would be a nuisance, and was not intended to affect private rights, the section fails as a basis for the argument, and in any event a mere authority to condemn property for the construction and repair of a sewer system, as is provided by section 4404, is so limited in its provisions, and such provisions have so uniformly been construed as not permitting a nuisance, that the argument has no force.

The defendant contends that the opinion failed to consider certain controlling decisions of the court.

DuPont De Nemours Powder Co. v. Dodson, 49 Okla. 58, 150 P. 1085, was an injunction suit in which the court denied that the defendant would be exempt from damages resulting from the location of a warehouse for the storage of explosives, but denied the injunction sought by the plaintiff, admitting that where the statute does not provide for a location, the location must be such as not to injure others, but holding that in that case the location had been fixed by the Legislature, for it had authorized building in such a location as the Chief Mine Inspector should certify to be a reasonably safe distance from the class of properties listed in the statute. The case has nothing to do with the matter of pollution of a watercourse, or in determining the scope of authority under a permission to construct or operate a sewer system.

Consumers Light & Power Co. v. Holland, 118 Okla. 132, 247 P. 50, was an action for damages caused by spray from a spray pond necessarily used for cooling water for turbine engines, the generation of electric power by turbine engines being a proper mode of operation. There was no charge of improper location of the plant. The case is no authority for holding that a nuisance resulting from what is held to be wrongful conduct should be held permanent.

Cunningham v. Ponca City, 27 Okla. 858, 113 P. 919, was an action to enjoin the city from entering upon land condemned for a sewer outlet. There was no nuisance, and the injunction was properly denied. The right to enter upon condemned land was all that was before the court for decision.

Duncan v. Stanley, 133 Okla. 245, 271 P. 422, follows Mangum v. Sun Set Field, which we overruled in the opinion in this case. Negligence was not involved, nor should the court have considered what the city had done in an attempt to stop the nuisance. The nuisance was a wrong and it was the duty of the city to abate it, and a plea of the statute of limitations on the theory that the nuisance was permanent should not have been sustained.

There is another Oklahoma case holding with the contention of the defendant, but the defendant evidently overlooked it. It is City of Ardmore v. Colbert, 52 Okla. 235, 152 P. 603, a commissioner's opinion in which the contention that the nuisance was temporary was denied and an attempt was made to distinguish Ardmore v. Orr, 35 Okla. 305, 129 P. 867, on the ground that in that case there was only an insufficient culvert. The court must not have read what followed the statement in the Orr Case that the sewer was under the railroad track. It was necessary to enlarge or install several blocks of the sewer system to abate the nuisance in the Orr Case. Also, the court in the Colbert Case, in saying that the cause was continuing, appears to have meant that the sewer system was permanent, an argument that we denied to be valid in the opinion in this case.

The last case decided by this court upon the point prior to this case was City of Collinsville v. Brickey, 115 Okla. 264, 242 P. 249, in which a plea of the statute of

limitations was denied on the ground that the nuisance was a continuing or temporary nuisance. The case says nothing about negligence, but the conduct is merely considered as unlawful. The conclusion is in line with the recent Arkansas cases and with Winchell v. Waukesha, supra.

We felt that our opinion was not only in accord with the best considered authorities in this jurisdiction, but also that it was in accord with the almost universal holdings in other jurisdictions, and being so fully supported in that conclusion by the authorities cited by the defendant in its own brief upon its petition for rehearing, the petition for rehearing is necessarily denied.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.